197 So. 594

## RICHARD et al. v. CITY OF NEW ORLEANS.

### No. 35538.

June 28, 1940.

Rehearing Denied July 18, 1940.

Spencer, Phelps, Dunbar & Marks, Esmond Phelps, Pierre D. Olivier, Louis B. Claverie, Ed. J. De Verges, James J. Lan-

dry, and Louise Louque Burton, all of New Orleans, for plaintiffs and appellants.

Francis P. Burns, City Atty., Wm. Boizelle, Asst. City Atty., both of New Orleans, for defendant and appellee.

Denegre, Leovy & Chaffe and John L. Toler, all of New Orleans, for Louisville & N. R. Co., intervenor and appellee.

Rosen, Kammer, Wolff & Farrar, of New Orleans, for Wesson Oil & Snowdrift Co., Inc., intervenor and appellee.

ROGERS, Justice.

This is an action for slander of title. The property in dispute is a strip of land situated in the Third District of the City of New · Orleans, measuring 140 feet (French measure) in width and extending between parallel lines a distance of approximately 2,000 feet. The strip of land was formerly used by the Pontchartrain Railroad Company as a right of way, extending from Florida Avenue along Elysian Fields Avenue, in the direction of Lake Pontchartrain, to the Howe-Martin line, as is more fully described in the pleadings.

The original plaintiffs, fifty-one in number, are the heirs of Nicholas Noel Destrehan, and the defendant is the City of New Orleans. The Wesson Oil & Snowdrift Co., Inc., and the Louisville & Nashville Railroad Company, as parties in interest, intervened and joined the defendant in resisting plaintiffs' demands.

The City of New Orleans filed an exception of no right or cause of action and also an answer and reconventional demand, denying plaintiffs' claim of title and possession, asserting title in itself, and praying that it be recognized as the owner of the property in dispute.

After the trial of the case in the district court, the trial judge rendered a judgment on the main demand in favor of the defendant and the interveners, maintaining the exception of no right or cause of action, and dismissing plaintiffs' suit. The trial judge also rendered judgment in favor of the defendant and the interveners on the reconventional demand decreeing that the title to the property in dispute is vested in the City of New Orleans. Plaintiffs are appealing from the judgment.

The strip of land in dispute was a part of a larger tract of land originally owned by Bernard Marigny whose property, known as the Marigny Plantation, extended on both sides of Elysian Fields Avenue. Marigny laid out the Faubourg Marigny and the New Faubourg Marigny. He dug a canal on the site of what is now the neutral ground on Elysian Fields Avenue. This canal extended from the public road (now Levee Street), adjacent to the Mississippi River, to a point on Florida Walk (now Florida Avenue); thence, in the form of an elbow, the canal extended to Bayou St. John. From recitals in acts of sale executed by Marigny, he apparently contemplated that "Canal Marigny" would be connected eventually with the Mississippi River.

In 1826, Marigny sold to Nicholas Noel Destrehan that portion of the Marigny Plantation which remained after the creation of the two faubourgs. The land in dispute was included in this sale. After

his purchase, Destrehan caused the property to be subdivided into a new faubourg according to a plan made by Joseph Pilie, surveyor, dated June 7, 1828. The new faubourg was named "Faubourg Franklin," and the plan of the faubourg made by Pilie was formally deposited by Nicholas Noel Destrehan in the office of Charles Janin, notary public, on June 22, 1830.

The Pontchartrain Railroad Company (Compagnie du Chemin a Coulisse de Pontchartrain) was incorporated by a special legislative act, approved January 20, 1830. On June 24, 1830, by act before Charles Janin, notary public, Destrehan granted the newly organized railroad company a right of way through his property. The company also obtained from other land owners grants of land necessary for its right of way. The Marigny Canal lying in the center of Elysian Fields Avenue was filled in. The railroad tracks were laid along Elysian Fields Avenue from a point near the Mississippi River to the village of Milneburg on the shore of Lake Pontchartrain. This railroad, which was the second railroad constructed in the United States, was in continuous operation for a period of approximately 100 years, or until June 3, 1935. On that date the property ceased to be used for railroad purposes. When that occurred, the heirs of Nicholas Noel Destrehan sued the railroad company in the Civil District Court for the Parish of Orleans, and obtained a judgment in their favor decreeing that the property in question, in accordance with the terms of the grant by Destrehan, reverted to the heirs. This judgment was rendered on June 18, 1935, and signed on June 24, 1935. The City of New Orleans and the interveners were not parties to the proceeding in which the judgment was obtained.

The City of New Orleans and the interveners assert that the strip of land in dispute, for more than 100 years, has been dedicated as a public street and that the City has the right and duty to open Elysian Fields Avenue through the strip of land without plaintiffs' consent. Plaintiffs' contention, on the other hand, is that Elysian Fields Avenue did not extend beyond the elbow of the Marigny Canal at Florida Walk. The trial judge upheld the contention of the defendant and interveners and dismissed plaintiffs' suit.

It will be helpful, in disposing of the contentions of the parties, to briefly review the history of the property in dispute and the various transactions tending to establish the nature of its ownership as public or private property.

In the year 1805, Bernard Marigny laid out the front portion of his plantation as a suburb, styled "Old Faubourg Marigny," according to a plan of Joseph Pilie, Surveyor, dated March 16, 1806. This suburb extended from the river to what is known today as St. Claude Street. The principal street in this suburb was called the "Promenade des Champs Elysees," measuring one hundred and fifty feet, French measure, in width.

By a second plan of subdivision, made by Joseph Pilie, Surveyor, dated September 18, 1809, Marigny subdivided another por-

tion of his plantation which he called "New Faubourg Marigny," extending from St. Claude Street on both sides of the Promenade des Champs Elysees for a distance of nine squares to what is known today as Johnson Street. The Promenade des Champs Elysees was continued through the new faubourg with the same width of one hundred and fifty feet, French measure.

On both plans of subdivision there was located in the middle of the Promenade des Champs Elysees a canal, known as the "Marigny Canal," having a width of fifty feet, French measure, extending from the river in a northerly direction towards the lake to a point where the canal changed direction from north to northwest, at the intersection of what today is known as Florida Walk and Elysian Fields Avenue.

On the plans "Old Faubourg Marigny" and "New Faubourg Marigny," on either side of the canal, Bernard Marigny laid out and dedicated to public use two streets, promenades or walking avenues, each fifty feet, French measure, in width, which, with the canal in the middle, gave a total width of one hundred and fifty feet, French measure, to the Promenade des Champs Elysees.

The distance of one hundred and fifty feet, French measure, is equivalent to one hundred and fifty-nine feet, ten inches and three lines, American measure, which is the width plaintiffs seek to give to the property in dispute by the plan of Edgar Pilie, dated December 1, 1909, and offered in evidence by plaintiffs in this case, although that width is not the full width of the property in dispute, which is one hundred seventy-two feet, French measure, or one hundred eighty-six feet, six inches and one line, American measure.

After Bernard Marigny laid out his two faubourgs, he sold to Pierre Louis Delaronde, on May 15, 1819, by act before Marc Lafitte, notary public, that portion of his new Faubourg Marigny lying on the west, or upper side, and fronting on the Marigny Canal, up to a line which was seventy-five feet, French measure, distant from, and parallel to the center line of the canal, extending first in a northerly direction towards the lake, and thence in a northwesterly direction from the elbow of the canal at Florida Walk and Elysian Fields Avenue to the rear line of the Marigny Plantation. Subsequently, Marigny sold to Nicholas Noel Destrehan, on January 31, 1826, by act before Marc Lafitte, notary public, the remaining undivided portion of the Marigny Plantation lying on the east, or lower side, of the Marigny Canal. Included in this sale were nine squares of ground lying in the new Faubourg Marigny located on the east, or lower side, and fronting on the Promenade des Champs Elysees, extending from St. Claude Street to Johnson Street.

With the exception of these nine squares of ground, the portion of the Marigny Plantation lying on the lower, or east side, of the Marigny Canal was sold according to a plan of Joseph Pilie, Surveyor, dated March 5, 1820.

Subsequent to his purchase of the undivided remaining portion of the Marigny Plantation on the lower, or east side, of the Marigny Canal, Destrehan subdivided the property into a new faubourg, which he

called "Faubourg Franklin" according to a plan of Joseph Pilie, Surveyor, dated June 7, 1828. This plan was formally deposited in the office of Charles Janin, notary public, on June 22, 1830. The plan has been lost and apparently no copy of it is in existence.

As a result of the Pilie plan of subdivision, there came into existence and still exist the streets and public places as located within the limits of the remaining undivided portion of the Marigny Plantation purchased by Destrehan from Marigny in 1826. Many of the streets and public places bear the same names today that they were given on the Pilie plan under the direction of Destrehan, such as "Commerce Place," "Independence ˙ Square," "Constitution Place," "Treasure," "Abundance," "Agriculture," and "Industry" Streets.

On the same day, June 22, 1830, on which Destrehan deposited the Pilie plan·of the Faubourg Franklin, as a public record,·in the office of Charles Janin, notary public, he executed another notarial act before the same notary, conveying to George Eustis and M. W. Hoffman squares Nos. 6 and 7 on the lower, or east side, of the Marigny Canal. This sale was made by a particular description which specifically referred to the Pilie plan of the Faubourg Franklin. The sale of squares Nos. 6 and 7 in "Faubourg Franklin" took place two days before Destrehan granted a right of way to the Pontchartrain Railroad Company.

By two other acts, on June 24, 1830, before Charles Janin, notary public, Destrehan sold to the Pontchartrain Railroad Company square 15 (now 1378), fronting on Elysian Fields Avenue between Law and Dorgenois Streets, bounded in the rear by Marigny Street, and squares numbers 4, 5, 10, 50, 55 and 56, according to the plan of the Faubourg Franklin, dated June 7, 1828, deposited in the office of Charles Janin, notary public, on June 22, 1830. On the same day that the foregoing sale of squares in the Faubourg Franklin to the Pontchartrain Railroad Company occurred, to-wit, June 24, 1830, Destrehan granted to the Railroad Company a "grant and concession" to use, for the purposes of the road the greater part of the property in contest in this suit.

On March 7, 1836, by an act passed before Theodore Seghers, notary public, Destrehan sold to Timoleon LeSassier, seven lots of ground in square 16 (now 1497), according to the plan of the "Faubourg Franklin," designated as lots Nos. 2 to 8 of the square which "had been adjudicated to the said LeSassier at a public auction held by the said Nicholas Noel Destrehan on February 20, 27 last."

Attached to the original act of sale from Destrehan to LeSassier is the original plan of square 16 of the "Faubourg Franklin" made by Joseph Pilie, the original surveyor of the entire property, which original plan is dated December 21, 1833, and shows that north of the elbow of the Marigny Canal there existed two streets or avenues designated on that plan as "Rue des Champs Elysees," on either side of the continuation of the projected Marigny Canal itself.

An examination of a photostat of this original plan, attached to the brief filed in

this case on behalf of the City of New Orleans, indicates that the property in dispute north of the elbow of the Marigny Canal was explicitly labelled on the map as a dedicated double street, similar to that portion of the same street immediately adjacent to, and in front of, square 16. A reference to the map will show also the existence of "Commerce Place" which, today, is treated as a locus publicus. That portion of the plan which contains the legend and signature of Joseph Pilie represents what is intended to be square 17 (now 1589), presently owned by the Louisville & Nashville Railroad Company. The particular square 16 (now 1497), hereinabove referred to, is today the property of the Equitable Equipment Company.

By an act before Theodore Seghers, Notary Public, dated March 1, 1837, Destrehan sold to Basile Beauregard one hundred and eighteen squares and parts of squares in the "Faubourg Franklin," specifically referred to as being described on the plan of the faubourg made by Joseph Pilie, Surveyor, June 7, 1828.

Among these squares that were sold are five squares, Nos. 17, 18, 19, 20, and 21, according to the plan of the "Faubourg Franklin." These squares today have new numbers and designations. Square 17 is now known as square No. 1589 and is bounded by Elysian Fields, Industry, Marigny, and Place du Commerce. This square, as we have hereinabove said, is one of the squares owned by the Louisville & Nashville Railroad. The title to the square goes back to Destrehan who sold it, among other property, to Basile Beauregard.

In the sale from Destrehan to Beauregard appears the following clause: "It is finally understood that Mr. Destrehan cedes all right that he may possess in all the lots, squares and sections of squares which may belong to him, on the right of the railroad, that is to say, going from the river to the Lake."

Attached to this is an original plan of square 15 made by Joseph Pilie on December 21, 1833, the same day on which he made the plan for square 16 which Destrehan sold to Timoleon LeSassier.

Nicholas Noel Destrehan died June 16, 1848. Apparently the last sale made by him of his holdings, in the "Faubourg Franklin," was a sale made to Athalie Drouillard, a free woman of color, by an act passed before Adolphe Mazerau, Notary Public, on May 6, 1847. The copy of the deed of this important transaction shows the fact that Nicholas Noel Destrehan sold to this particular woman eight whole and nine fractional squares of ground situated in the "Faubourg Franklin," and designated by the numbers 22 to 38, both inclusively, on a plan of the faubourg made by Joseph Pilie, on June 7, 1828, and erroneously stated in the act to have been deposited in the office of Theodore Seghers, a former notary. The plan was actually deposited by Nicholas Noel Destrehan in an act of deposit before Charles Janin, Notary Public, on June 22, 1830. These seventeen whole and fractional squares comprise the entire segment of the "Faubourg Franklin" lying within the limits of a triangle roughly formed by the eastern bank of the Marigny Canal, extending in a northwesterly di-

rection from the Promenade des Champs Elysees at Florida Walk, and the western, or upper side, of the Avenue, as it extended in a northerly direction from the elbow of the Marigny Canal at Florida Walk.

Four whole and one fractional squares sold by Destrehan to Athalie Drouillard front on the west, or upper side, of the property in dispute for its entire length, coincident with the five squares on the lower or opposite side. One of the boundaries of each of the four and one fractional squares of ground is actually designated in the act of sale as the Promenade des Champs Elysees (Elysian Fields Avenue), and the names of all the streets that bound the squares are the same today as they were when the sale was executed. These squares are presently owned by the Wesson Oil & Snowdrift Company, Inc., and with the intersecting streets, constitute the entire frontage on the west, or upper side, of the property in dispute.

The streets which are described in the deed by Destrehan to Basile Beauregard, dated March 1, 1837, and in the deed by Destrehan to Athalie Drouillard on May 6, 1847, intersecting the property, and designated as "Treasure, Abundance, Agriculture and Industry Streets" and the Promenade des Champs Elysees, are the same streets which today separate the various squares owned by the Louisville & Nashville Railroad Company and the Wesson Oil & Snowdrift Company, Inc., interveners, abutting and fronting on both sides of the strip of land in dispute.

In pursuance of the duty imposed on the City of New Orleans by its charter, subparagraph 3, Section 6 of Act 159 of 1912, to open and keep open and free from obstruction all its streets, the City adopted Ordinance No. 12134, C.C.S., on April 15, 1930, declaring that it was "to the best interest of the public of the City of New Orleans that Elysian Fields Avenue be extended, opened and dedicated as a public street and neutral ground from Florida Walk to Lake Pontchartrain." As the Railroad Company was in possession of and using Elysian Fields Avenue for railroad purposes, the City, in order to effect its object with the minimum expense and delay, entered into an act of compromise and exchange with the Railroad Company. In accordance with this agreement, the Railroad Company abandoned the operation of its line from North Rocheblave Street to Lake Pontchartrain, and transferred to the City all its rights and interests in any property required for the opening or extension of Elysian Fields Avenue. The City, in return, conveyed to the Railroad Company certain property situated at the foot of Canal Street.

Plaintiffs allege that the recordation of the act of compromise and exchange constitutes a slander and a cloud on their title to the property granted by Destrehan to the Railroad Company and abandoned by the railroad company to the City. Plaintiffs contend that at no time did the City ever question the right of the Pontchartrain Railroad Company to the exclusive use and possession of this property. Plaintiffs further contend the City has recognized that

Elysian Fields Avenue terminated at Florida Walk and that it could not extend the avenue from that point towards Lake Pontchartrain without the consent of the intervening landowners or the resort to expropriation proceedings. They base this contention on Ordinance No. 12134, C.C.S., adopted April 15, 1930, providing for the extending and opening of Elysian Fields Avenue from Florida Walk to Lake Pontchartrain and the report made to the Commission Council by the Commissioner of Public Utilities, prior to the adoption of the ordinance. This report contains the statement that it would be necessary for the City to expropriate the property in controversy because, inferentially, it was owned by the plaintiffs.

The City contends that the statement of the Commissioner of Public Utilities was based on errors of fact and of law. Be that as it may, it is clearly not controlling of the issues involved in this case. The City could not be divested of its title and possession of the property by the statement. This could be done only by vote of at least two-thirds of the members of the Commission Council, voting on the specific question, that the property was no longer necessary for the public use to which it was originally destined. Section 8, Act 159 of 1912, as amended by Act 338 of 1936. And the facts on which plaintiffs' action for slander of title is based show that the City was actually proceeding to improve the property for the benefit of the public when it was met with this suit.

The question of dedication vel non is the question to be decided in this case.

Title by dedication must emanate from the owner whose intent to dedicate must be manifested by his acts. The general rule governing dedications is stated in Dillon on Municipal Corporations, 5th Ed., vol. III, sec. 1079, as follows:

"An intent on the part of the owner to dedicate is absolutely essential, and unless such intention can be found in the facts and circumstances of the particular case, no dedication exists. But the intention to which courts give heed is not an intention hidden in the mind of the land owner, but an intention manifested by his acts. It is the intention which finds expression in conduct and not that which is secreted in the heart of the owner, that the law regards. Dedications have been established in every conceivable way by which the intention of the party can be manifested.

"Where a plat is made and recorded and lots are sold with reference thereto, the requisite intention is generally indisputable."

There are a number of cases in our jurisprudence that recognize and apply the general rule that the selling of lots with reference to a plat showing streets and avenues amounts to an immediate and irrevocable dedication of such streets and avenues to the public. One of these cases is Sheen v. Stothart, 29 La.Ann. 630. Another case is Iseringhausen v. Larcade, 147 La. 515, 85 So. 224.

The application of the foregoing legal principles to the facts disclosed by the record has convinced us that the trial judge was correct in his conclusion that the

strip of land in dispute is a locus publicus through which the City had the right to open Elysian Fields Avenue.

It is to be observed that in his purchase from Bernard Marigny, on January 31, 1826, Nicholas Noel Destrehan bound himself, his heirs, successors or assigns "to suitably maintain as a real charge, the street, promenade or road fifty feet in width running from Goodchildren Street (now St. Claude Street) along the Canal to the point at which said Canal changes direction, forming an elbow * * *." The obligation thus assumed by Destrehan constituted the recognition, on his part, of the street now Elysian Fields Avenue, extending from Goodchildren Street, along the canal, to the point at which the canal, forming an elbow, changed direction. This street, lying on the east side of the canal, formed a portion of the western boundary of the property sold by Marigny to Destrehan, which he later subdivided under the name of Faubourg Franklin.

■ Owing to the loss of the original plan of the Faubourg Franklin made by Joseph Pilie, on June 7, 1828, it was necessary on the trial of this case for the parties to rely on other documents for proof of its contents. According "to the grant of concession to use" executed by Destrehan in favor of the Pontchartrain Railroad Company, the right of way granted was 140 feet, French measure, in width. This, however, does not embrace the full width of the strip of land which, according to an original extract of the plan of Faubourg Franklin made by Joseph Pilie on December 21, 1833, indicates that the Promenade des Champs Elysees, at the point in dispute, is approximately 172 feet, French measure, in width. On the same day, June 22, 1830, that Destrehan deposited the Pilie plan of the Faubourg Franklin in the office of Charles Janin, notary public, before the same notary, he sold to George Eustis and Maurice W. Hoffman "two squares situated in the Faubourg Franklin in this City and designated by the numbers 6 and 7 on a plan of said faubourg, dated June 7, 1828, made by Joseph Pilie, surveyor of this City, deposited in this office by an act passed this day." The boundaries of the squares are specifically set forth, one boundary being Elysian Fields Street. These sales were made two days prior to the sale of the right of way by Destrehan to the Pontchartrain Railroad Company. Plaintiffs contend that they are of no probative value, because the property they conveyed was between the elbow of the Marigny Canal and the Mississippi River, and because they were recorded subsequent to the transfer of the right of way by Destrehan to the Railroad Company. The fact that these squares were not situated in the Faubourg Franklin lying beyond the elbow of the Marigny Canal and that the sales were not filed in the conveyance office prior to the conveyance of the right of way to the Railroad Company does not destroy their probative value. The fact remains that these sales represented public sales of property in the Faubourg Franklin according to the map thereof which, on the same day, was made a matter of record in the office of the notary before whom all the instruments were executed.

Two days after Destrehan had executed the foregoing instruments, he appeared before the same notary, Charles Janin, and granted to the Pontchartrain Railroad Company the right to use a strip of land which the grantor described as follows:

"A strip or piece of land * * * represented as a continuation of the said canal and streets beyond the elbow and turn thereof, one hundred and forty French feet in width, commencing at the elbow of said canal and ground belonging to the said company, and continuing on a straight line with said canal as it runs from the Mississippi River to said elbow and running through said Destrehan's faubourg * * * the whole according to the plan of said Faubourg Franklin, made by Joseph Pilie, City Surveyor, under date of the Seventh, June, 1828, deposited in this office by act dated Twenty-second day of June instant."

One of the conditions of the grant reads as follows:

"Also this grant is made on condition that the running of said road shall not interfere with or violate any obligation or contract which the said Destrehan is under to Mr. Bernard Marigny in the contract executed on the Thirty-first, January, 1825, before Marc Lafitte then a notary in this City, by which said Destrehan purchased and acquired said property from said Marigny, but is subject to the same; of which act the said Company has taken full knowledge as the President doth hereby declare it."

Thus it will appear from the act evidencing the transaction between Destrehan

and the Railroad Company that Destrehan granted the company the right to use the strip of land which was described in the act as representing, on the Pilie plan of June 7, 1828, a continuation of the canal and streets, 140 feet, French measure, in width, extending beyond the elbow of the Marigny Canal subject to the obligations assumed by Destrehan in the act of sale executed by Bernard Marigny on January 31, 1825.

A reference to a plan made by E. A. D'Hemecourt, Civil Engineer, dated February 5, 1848, a photostat of which appears in the record, shows the existence of a public street, known as "Elysean Fields Avenue," in front of five squares, numbered 22 to 26, both inclusively, sold on May 6, 1847, to Athalie Drouillard. The five squares of ground in question were described in the deed from Destrehan to Drouillard as fronting on Elysean Fields Avenue according to the missing Pilie plan of Faubourg Franklin, dated June 7, 1828.

The D'Hemecourt plan of February 5, 1848, was used by the Civil Sheriff for the Parish of Orleans as the basis of certain public sales made by him in the case of L. F. Hazeur v. Athalie Drouillard, No. 2623 of the late Third District Court, of all the squares of ground acquired by Athalie Drouillard from Nicholas Noel Destrehan. The sheriff's sales of the Drouillard property were made in the year 1849.

The record discloses that the Louisville and Nashville Railroad Company is the owner of five squares of ground that were among those sold by Destrehan to Basile

Beauregard on March 1, 1837, as situated in Faubourg Franklin and specifically referred to as being described on the plan of the faubourg made by Joseph Pilie, surveyor, June 7, 1828. These squares, according to the plan of Faubourg Franklin, are numbered 17 (now 1589), 18 (now 17-12), 19 (now 1796), 20 (now 1923), 21 (now 1972). The squares lay immediately adjacent to and on the lower, or east, side of the property in dispute, and together with the intersecting streets and a portion of the "Place du Commerce," face the entire length of the property in dispute. Attached to the sale by Destrehan to Beauregard is an original plan of Square 15 made by Joseph Pilie, the same surveyor who originally surveyed Faubourg Franklin, dated December 21, 1833. The Wesson Oil & Snowdrift Company Inc., are the present owners of five of the nine squares of ground sold by Destrehan to Athalie Drouillard on May 6, 1847, according to the Pilie plan of Faubourg Franklin. The squares owned by the Wesson Company are designated on the Pilie plan by the numbers 22, 23, 24, 25, and 26 and are now known, respectively, as squares numbers 1971, 1924, 1795, 1713, and 1588. Together with the intersecting streets, they face the entire frontage on the west, or upper side, of the property in dispute.

Square 16, on the Pilie map of the Faubourg Franklin (now Square 1497), is owned at the present time by the Equitable Equipment Company. One of the ancestors in title of the present owner was Timoleon LeSassier. Attached to the deed by which Destrehan conveyed Square 16 to Timoleon LeSassier is an original plan of the square made by Joseph Pilie, the same surveyor who originally surveyed the Faubourg Franklin, dated December 21, 1833.

In a case brought by the Destrehan heirs against the Pontchartrain Railroad Company, No. 201361 of the Civil District Court for the Parish of Orleans, plaintiffs filed in evidence a blue print dated July 31, 1936, of a plan dated December 1, 1909, by Edgar Pilie, surveyor. The same blue print was also filed in evidence in this case. An examination of the blue print discloses that an open space of land was left between the center strip of ground claimed by the plaintiffs and the five squares of ground now owned by the Louisville & Nashville Railroad Company. A reference to the photostat of the plan drawn by Joseph Pilie, dated December 21, 1833, and annexed to the act of sale of seven squares in Faubourg Franklin from Destrehan to Timoleon LeSassier on March 7, 1836, discloses that this plan, at a point between the elbow of the old Marigny Canal, also shows a vacant space of land between the right of way of Pontchartrain Railroad Company and old square 17 (now 1589), presently owned by the Louisville & Nashville Railroad Company, with the legend "Rue des Champs Elysees," just as it appears on the blue print of the plan made by Edgar Pilie on December 1, 1909. The vacant space appearing on the blue print alongside the strip of land in dispute can not be considered as anything but a reservation for a public street.

The side streets are also delineated on the plan of Edgar Pilie. Proceeding in the direction of Lake Pontchartrain they

are Commerce, Industry, Agriculture, Abundance, and Treasure Streets. Marigny Street is shown on the blue print as being the next street, proceeding downtown from Elysian Fields Avenue, and is shown as running between the elbow of the Marigny Canal and alongside the property of the Louisville & Nashville Railroad Company. The same streets, which now separate the various squares owned by the interveners, are the same streets that are referred to in the deed by Destrehan to Beauregard, dated March 1, 1837, and in the deed by Destrehan to Drouillard, dated May 6, 1847.

The last sale mentioned—the one by Destrehan to Drouillard—was made one year before the death of Destrehan and seventeen years after the execution of his grant to the Pontchartrain Railroad Company. At that time the success of the Railroad Company was assured and any lingering doubts that may have been in the mind of Destrehan as to the success of the railroad company at the time he and the other landowners made their grants had been removed, and his object of disposing of his lands at increased prices had been accomplished. If there was any doubt of the intention of Destrehan to dedicate the property in dispute for public purposes, it would seem that he forever put that question at rest when he sold to Athalie Drouillard squares 22, 23, 24, 25, and 26 which are shown on the plan of Edgar Pilie by the present numbers 1971, 1924, 1795, and 1588, and described those squares as bounded by the Promenade des Champs Elysees and the respective side streets, according to the

plan of the Faubourg Franklin made by Joseph Pilie, city surveyor, on June 7, 1828.

The following interlineation appears at the end of the deed from Destrehan to Drouillard, viz.,—"bounded in their entirety by the portion northwest of La Promenade des Champs Elysees, the limits of the lands of Gentilly, and a line distant 75 feet from the center of the elbow of the canal of Bernard Marigny up to the Promenade des Champs Elysees, the point of departure."

Plaintiffs argue that the interlineation negatives any inference that Destrehan intended to dedicate to public use Elysian Fields Avenue back of the elbow at the Marigny Canal; that Destrehan deliberately outlined the entire tract sold and, in so doing, did not give one of the boundaries as Elysian Fields Avenue. The sale, however, was not a sale by metes and bounds. The plan of Pilie's by which the squares of ground were sold, designates their numbers and delineates their street boundaries on their four sides. Moreover, the deed itself, after reciting, "which squares and fraction of squares are contained between the following streets, viz.," sets forth the numbers and street boundaries of the squares. The four whole and one fractional squares which front or abut on the west, or upper, side of the strip of land in dispute for its entire length, as actually delineated on the Pilie plan and described in the deed itself, give the Promenade des Champs Elysees (Elysian Fields Avenue) as one of the four street boundaries of each square. The names of

all the streets bounding the squares are identical with the names of the streets by which they are bounded at the present time.

Plaintiffs argue that Destrehan could not have dedicated Elysian Fields Avenue as a public street subsequent to June 24, 1830, on which date he conveyed to the Pontchartrain Railroad Company the right of way over his land. This is on the theory that the conveyance to the Railroad Company was recorded prior to any other conveyance executed by Destrehan. Plaintiffs' argument is untenable. Two days before Destrehan granted a right of way to the Railroad Company he deposited the Pilie plan of the Faubourg Franklin in the office of Janin, notary, and executed the sale of squares 6 and 7 as described on the plan to George Eustis and M. W. Hoffman. On the same day that he granted the right of way to the Pontchartrain Railroad Company, Destrehan sold to the Railroad Company itself six squares of ground,—Nos. 4, 5, 10, 50, 55, and 56, on the Pilie plan of the Faubourg Franklin which had been deposited in the office of Janin, notary, only two days before. All these conveyances by Destrehan were made with respect to the Pilie plan of June 7, 1828. Since the conveyance by Destrehan to the Pontchartrain Railroad Company of the right of way over his land was made according to the Pilie plan, the date that it was recorded in the conveyance office of the Parish of Orleans is unimportant. If the Pilie plan showed Elysian Fields Avenue as a public street which, with the evidence before us, we think it did, both

Destrehan and the Railroad Company, dealing with reference to the plan, became committed to Elysian Fields Avenue as one of the streets in the subdivision and neither could be heard to dispute its existence.

Plaintiffs point out that the deed of conveyance by Destrehan to the Pontchartrain Railroad Company set forth that the property conveyed was "a strip or piece of land represented as a continuation of the said canal and the streets between the elbow and turn thereof," according to the plan Pilie deposited in the office of Janin, notary, on June 22, 1830.

Plaintiffs argue that as the Pilie plan showed the strip was a solid tract of land 150 feet wide, that fact is inconsistent with the claim of the defendant and interveners that the plan showed the strip as dedicated to public use as a street; that the purpose of the Pontchartrain Railroad Company in acquiring the strip would have been frustrated if the property it acquired was subject to a previous dedication for use as a public street. This argument is also untenable. In the first place, the strip was represented on the Pilie plan as a continuation of the Marigny Canal and the streets between the elbow and turn thereof. This could only mean that the strip of land as delineated on the plan represented an extension of Elysian Fields Avenue, including the canal, from Florida Walk towards Lake Pontchartrain. In the next place, it is not unusual for a municipality to permit a Railroad Company to operate over its streets where the public interests would be subserved thereby.

It makes no difference that such streets have not actually been opened to general use, it being for the municipal authorities to say when they should be opened for that purpose. Furthermore, if it be conceded that Destrehan, having previously dedicated the strip of land as a street for the public use, exceeded his power in granting the right of way to the Pontchartrain Railroad Company, that fact might have authorized the city or some other interested party to attack and set aside the transaction as invalid, but it could not have the effect of divesting the strip of land of its character as a public street.

Plaintiffs further argue that the reverter provision in the conveyance by Destrehan to the Pontchartrain Railroad Company is wholly inconsistent with the idea that the Pilie plan, when deposited in the office of Janin, notary, showed the dedication of the strip in dispute to public use for streets. Plaintiffs insist that the reverter provision is consistent only with the full and unrestricted ownership of the strip. This contention was made in the court below. The trial judge rejected it, assigning as his reasons therefor the following:

"Before going further, it seems appropriate to ask the question: What did Destrehan intend by this provision for a reversion upon which plaintiffs rely; what did he have in mind? While human limitations will not permit turning back time one hundred years and eliciting the answer to this query from the mouths of the principal actors of that day, yet, in view of the avowed purpose of Destrehan's grant, and bearing in mind that a railroad was a new and comparatively unproven venture at that time, it seems to the Court that there can be but one answer, and that is that Destrehan intended to make certain that the grant he made, without receiving any monetary consideration therefor, would always be used as a means of transportation for the industries and home builders who settled on his land. What other purposes could he have had in mind? Was it not a pledge to those who purchased his land and settled in his Faubourg that they would always enjoy the use of this broad avenue as a highway between the City and Lake Pontchartrain?"

There is considerable merit in the comments of the trial judge on the reverter clause. We think it may be safely asserted that much harm may result from the retention in remote dedicators of the fee in narrow strips of land, valueless for many years, because of their public or quasi-public use which, on the abandonment of such use, become valuable for private purposes. Certainly such agreements are likely to be productive of disputes and litigation.

It will be observed that the reverter clause provides that the strip of land would revert not only to Destrehan or his heirs, but to his assigns. The Louisville & Nashville Railroad Company and the Wesson Oil & Snowdrift Company, Inc., are assigns of the property abutting on both sides of the strip of land in dispute. If plaintiffs are correct in their contention that the strip of land over which the Railroad Company exercised its right

of way reverted to private ownership after the right of way was abandoned, it may well be that the fee of the strip is in the owners of the abutting property and not in plaintiffs. This is on the theory that a sale of land abutting on a street conveys a moiety of the street, unless a contrary intention is clearly indicated. We are persuaded that at the time Destrehan granted the right of way over his land to the Pontchartrain Railroad Company, with the reverter clause, he was not concerned so much in retaining the fee for the benefit of his remote heirs as he was in securing the prompt construction and operation of the railroad across a portion of his land, thereby enhancing the value of his remaining land.

From the beginning, Destrehan dealt with the property he purchased from Bernard Marigny with reference to the survey made by Joseph Pilie on June 7, 1828. All his conveyances, including the "grant or concession to use," in favor of the Pontchartrain Railroad Company were made according to the Pilie survey. Annexed to certain acts are plans that show Elysian Fields Avenue, which appears thereon as Rue des Champs Elysees, as a public street. Those acts and plans also show that Elysian Fields Avenue extends beyond the elbow of the Marigny Canal to Florida Walk, in the direction of Lake Pontchartrain. If plaintiffs' contention should be sustained, it would mean not only that the public would be prevented from using Elysian Fields Avenue as a thoroughfare, but that the Louisville & Nashville Railroad Company and the Wes-

son Oil & Snowdrift Company, Inc. (whose ancestor in title was Nicholas Noel Destrehan), would also be deprived of its use, in spite of the fact that Destrehan sold them a number of squares, one of the given boundaries of which was the Rue des Champs Elysees. If Destrehan were living today, it is certain he could not prevent his vendees, Louisville & Nashville Railroad Company and the Wesson Oil & Snowdrift Company, Inc., from using Elysian Fields Avenue. Nor could he be heard to contradict the representations made in his various acts of sale to the prejudice of those persons who have acted upon the faith of his representations. He would be estopped by his conduct, not only as to his vendees but also as to the general public, from denying the public character of the strip of ground in dispute.

Nicholas Noel Destrehan had the map of Faubourg Franklin made by Joseph Pilie, and he sold a number of squares of ground and otherwise dealt with his property with reference to that map. He could not be heard, in contradiction of his solemn declarations in the various instruments affecting the property, to dispute the existence of the streets forming part of the subdivision and to appropriate the land composing the streets to his own use. If Destrehan could not do this, neither can plaintiffs as his heirs. They have no greater rights than he would have, if he were living at this time. Schwenck v. Schwenck, 52 La.Ann. 239, 26 So. 859.

For the reasons assigned, the judgment appealed from is affirmed.