United States Court of Appeals,

Fifth Circuit.

No. 94-30074.

MISSOURI PACIFIC RAILROAD CO., et al., Plaintiffs,

River City Joint Venture, (Substituted as appellant in place of New Orleans 2000 pursuant to FRAP 43), Plaintiff-Appellant,

and

New Orleans 2000 Partnership, Cross-Appellee,

v.

CITY OF NEW ORLEANS, Defendant-Appellee, Cross-Appellant.

March 2, 1995.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before WISDOM, KING and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

A railway company succeeded by Missouri Pacific Railroad ("MoPac") constructed buildings and railroad tracks on a tract of land in the City of New Orleans including certain strips of land which were formerly streets. After ceasing railroad operations, MoPac agreed to sell the tract to New Orleans 2000 Partnership ("NO 2000"). The City of New Orleans then asserted a claim declaring itself to be the owner of the former streets within the tract. MoPac responded by instituting this possessory action against the City, seeking to be maintained in possession of the land underlying the former streets. Since filing suit, the original plaintiff, MoPac, sold the tract to NO 2000, which substituted as the Plaintiff. During the pendency of this appeal, NO 2000 sold the

1

tract, except Water Street, to River City Joint Venture ("River City"), now substituted as the Plaintiff-Appellant. NO 2000 remains the Cross-Appellee as to the Water Street property.

On stipulated facts the district court found that the closed streets, except Water Street, had been impliedly dedicated to the City of New Orleans. We agree. The court further held that the implied dedication vested ownership of the land underneath such streets in the City and that under a city ordinance granting the railroad the right to close the streets, the railroad's possession was only precarious and not as owner. Here we disagree. Under Louisiana law, an implied dedication vests a city with only a servitude of public use, not ownership. After the railroad acquired the properties adjacent to the streets, the City acquiesced in the closing of the streets, and the railroad began possession of the former streets for itself and not for the City. The City was not surrendering to the railroad possession of the land underlying the streets as owner because the City never possessed the land as owner. It had only a servitude. We therefore reverse in part. We affirm in part with regard to the separately disputed Water Street property.

## I. Background

In order to succeed in a possessory action, a plaintiff seeking to be maintained in possession of immovable property must prove the following elements:

(1) there was a disturbance of possession in fact or in law;

(2) plaintiff had possession at the time the disturbance occurred;

(3) plaintiff's possession was for itself (that is, under color of title or as owner) and not "precarious";

(4) plaintiff had quiet, uninterrupted possession for more than one year before the disturbance;

(5) plaintiff instituted the possessory action within a year of the disturbance.

La.Code Civ.Proc.Ann. arts. 3655, 3656, 3658 (West 1961 & Supp.1994). The parties dispute only element number three—namely, whether the railroad's possession was precarious rather than "for itself" or "as owner."

River City contends that it and its ancestors in title have possessed the closed streets as owner. The City counters that it had full ownership of the streets and that River City and its ancestors in title have possessed the streets only by permission of the City or precariously.[1] The City contends that because the railroad was a precarious possessor for the City, its successors may not bring a possessory action against the City. *See*

_____

[1]Though the City raises its own title in the answer, it has not thereby converted the action from a possessory action to a petitory action, because the title is raised only to challenge the railroad's claim to possession as owner. *Compare* La.Code Civ.Proc.Ann. art. 3657 (West 1961) (defendant in a possessory action asserting title judicially confesses possession of plaintiff in the possessory action and converts the suit to a petitory action) and *id.* art. 3661 (West Supp.1994) (evidence of ownership is admissible in possessory action to show possession of a party as owner) *with Rudd v. Land Co.,* 188 La. 490, 495, 177 So. 583, 585 (1937) (if issue of title is not set up in the prayer of the defendant's answer and the prayer is only that plaintiff's demands be rejected, the defendant does not convert the action to a petitory action). Despite the City's request for such a judgment in its appellate brief, the City did not pray for a judgment recognizing its ownership in the district court. *See* Answer, 2 R. 381-83. The City denies that the railroad ever possessed as owner and contends that the railroad possesses precariously for the City which owns the land. *See id.; see also* City's trial br., 3 R. 726-37.

La.Civ.Code Ann. art. 3440 (West 1994) (precarious possessor may bring possessory action "against anyone except the person for whom he possesses").

River City replies that the City never owned the land underneath the closed streets. Rather, the City merely held a servitude of passage, and the railroad and its ancestors always possessed as owner.

## II. Possession as Owner or for the City?

We begin with a presumption that the railroad began to possess for itself or as owner, "unless [the railroad] began to possess in the name of and for another." La.Civ.Code Ann. art. 3427 (West 1994). A person acquires possession for himself when he takes corporeal possession of a thing with the intent to have it as his own. *Id.* art. 3424. Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing. *Id.* art. 3425. Exercise of physical acts of use, detention or enjoyment of an immovable without the intent to possess as owner, however, constitutes mere precarious possession. *See id.; see also id.* art 3437 (exercise of possession with the permission of or on behalf of the owner or possessor is precarious possession).

The moment the railway company (Mopac's predecessor) took corporeal possession is important, because once one begins possessing precariously, he is presumed to continue possessing in that capacity. *See* La.Civ.Code art. 3489 (1870) (in force until Jan. 1, 1983) ("When a person's possession commenced for another, it is supposed to continue always under the same title, unless

4

there be proof to the contrary."); La.Civ.Code Ann. art. 3438 (West 1994) (eff. Jan. 1, 1983) (precarious possessor is presumed to possess for another); *id.* art. 3439 (precarious possessor commences to possess for himself only when he gives actual notice of this intent to the person on whose behalf he is possessing).

A. *Did the Railroad Begin to Possess for the City?*

The City essentially argues that upon taking corporeal possession, the railroad was merely maintaining the City's possession. The basis for the City's argument that River City possesses the former streets only by permission of the City is City Ordinance No. 8952, passed in 1912, in which the City granted MoPac's predecessor the right to build a railroad and related buildings, closing those city streets. The City contends that, as owner of the roadbeds, by this Ordinance it granted the railroad a franchise to occupy the streets for only so long as railroad operations continued.[2]

---

[2]The Ordinance granted the railroad certain "rights and privileges," including the right

> to enter the City of New Orleans and to construct, maintain and operate ... its lines of railway tracks in, along, across and over the streets, highways and public places in the City of New Orleans, herein mentioned, and to acquire in its name or through another corporation, for railroad purposes, by expropriation or otherwise, all necessary property in the City of New Orleans and particularly [the adjacent property] and thereon to erect, maintain and use such [railroad related structures necessary or convenient to such purposes].

The City agreed to close the specified streets so that the railroad could build on the streets and the contiguous property it acquired. In return for these rights, the railroad agreed to build a depot, pave some nearby streets,

According to stipulations, the railroad closed the streets and had begun to exercise physical control over the property by late 1916.  At that time the railroad had satisfied the requirement in the 1912 ordinance that it acquire the property fronting the streets.  When the railroad commenced corporeal possession of the streets, it did so with title to the land abutting the streets.

The stipulations do not show that the railroad began possession of the streets or underlying land precariously in the name of or for the City at that time.  The City possessed only a servitude of public use over the streets, as discussed next, and the railroad's possession began only after the City consented to closing the streets to public use.

B. *The City Possessed Only a Servitude.*

According to stipulations, the streets were originally dedicated to the City by means of the sale of lots with reference to an original city plan or subdivision plan depicting the now closed streets.  We agree with the district court that, by selling off the land in this manner, the owner impliedly dedicated the streets referenced in the plan to public use.  *See generally,* 2 A.N. Yiannopoulos, *Louisiana Civil Law Treatise,* § 98 (3d ed. 1991).

Such an implied dedication conferred a servitude of public use over the streets only;  title to the land underneath the

_____

and pay $5,000 annually to the City.

6

streets was not transferred to the City.[3] *James v. Delery,* 211 La. 306, 29 So.2d 858, 859 (1947) (holding that the sale of lots with reference to a map designating streets is a dedication creating only a servitude of passage over the streets shown); *Arkansas-Louisiana Gas Co. v. Parker Oil Co.,* 190 La. 957, 183 So. 229, 240 (1938) (comparing statutory dedication, which vests fee simple to the grantee, with implied dedication, which confers an easement or a servitude only[4]); *City of Baton Rouge v. State Nat'l Life Ins. Co.,* 271 So.2d 571, 573 (La.Ct.App.1972) (same), *writ denied,* 274 So.2d 709 (La.1973). The district court's holding that the implied dedication granted the City full ownership of the land underneath the streets was based exclusively on *Garrett v. Pioneer Production Corp.,* 390 So.2d 851 (La.1980). Addressing the effect of the 1896 enactment of "statutory dedication," *Garrett* concluded that such dedication was intended to grant the same rights as "formal" dedication, *i.e.,* fee simple ownership transferred to the municipality.[5] In noting the "prevailing view" that ownership of

---

[3]In this possessory action we need not determine who retained title to the underlying land.

[4]*Parker Oil* discusses "common law" dedication, another phrase for implied dedication. *See Parish of Jefferson v. Doody,* 247 La. 839, 174 So.2d 798, 801 (1965); *Baton Rouge,* 271 So.2d at 573; *see also* Yiannopoulos, *supra* § 98.

[5]La.Acts. 1896, No. 134, now appears as re-enacted in La.Rev.Stat.Ann. § 33:5051 (West Supp.1994). Because the parties in this case agree that the dedication of the streets occurred in or before 1837, statutory dedication was not possible.

The City argues alternatively that the property was "formally" dedicated. Because this theory was not advanced to the district court, we will not consider it for the first time on appeal. *See* Trial br. of City at 5-9, 3 R. 730-34;

7

municipal streets "would ordinarily vest in the public body," 390 So.2d at 855 (dicta), *Garrett* only recognizes the fact that, because most dedications of land to municipalities have been formal, the municipality ordinarily receives land ownership. *Garrett* does nothing to alter the long-standing principle of *Parker Oil* and *Delery* that an implied dedication results in a servitude of passage, not transferred ownership. We therefore reject the district court's interpretation of *Garrett* and hold that the implied dedication granted the City a mere servitude of passage over the streets.

C. *The Railroad Did Not Commence Possession for the City.*

Though the City may have possessed its servitude with the intent to have it as its own,[6] it did not possess the immovable burdened with that right, except as a precarious possessor for the owner. *See* La.Code Civ.Proc.Ann. art. 3656 (West 1961) (owner of a real right in immovable property possesses for himself); *Board of Comm'rs of Caddo Levee District v. S.D. Hunter Found.,* 354 So.2d 156, 165 (La.1977) (exercise by record-owner's grantee of acts of

---

*see also* Order & Reasons at 18 n. 70, 3 R. 683 ("The City does not assert ... that this plan evidences a formal dedication. The City's position has been, and continues to be, that the dedication was made by means of the sale of lots with reference to plans."); *Fine v. GAF Chem. Corp.,* 995 F.2d 576, 578 (5th Cir.1993) (declining to express opinion on issue not presented to district court in the first instance); *Capps v. Humble Oil & Ref. Co.,* 536 F.2d 80, 82 (5th Cir.1976) (same).

[6]Though a possessory action is available to one who enjoys a real right such as a servitude in an immovable, the Code denominates the exercise of that real right with the intent to have it as one's own as "quasi-possession" rather than possession. La.Civ.Code Ann. art. 3421 (West 1994).

8

physical possession pursuant to grant of right of way is possession attributable to the owner); *Faust v. Mitchell Energy Corp.,* 437 So.2d 339, 342-43 (La.Ct.App.1983) (owner of real right could maintain possessory action to protect enjoyment of real right but does not possess the land itself as owner); *see also* Yiannopoulos, *supra* § 311, at 602. Nothing in the ordinance demonstrates that the railroad commenced possession of the underlying land on behalf of the City as owner.

Nor does the record demonstrate that the railroad commenced possessing the servitude of passage on behalf of the City. When the railroad commenced possession of the land, it closed the streets and erected constructions, thereby contravening all recognition of a servitude of passage. Since the day the railroad closed the streets, it possessed the land for its own operations and for leasing and related commercial purposes. Having closed the streets off from further use as thoroughfares, the railroad possessed the land as though it were free of the burden of the City's servitude. The railroad's possession of the land therefore was "necessarily adverse" to any possession or exercise of the real right the City had enjoyed. Yiannopoulos, *supra* § 313, at 607 ("[W]hen the adverse possessor of the immovable ... erects constructions that contravene the possession of the real right ... the ... constructions mark the commencement of an adverse possession of both the immovable and the real right burdening it.").

The City lost possession of its servitude by abandoning the

9

servitude with its consent to close the streets from further use as a passageway or by the railroad's possession of the immovable as though it were free of the servitude.[7] *See* La.Civ.Code Ann. art. 3433 (West 1994) ("Possession is lost when the possessor manifests his intention to abandon it or when he is evicted by another by force or usurpation."); *see also* Aubry & Rau, *Droit Civil Francais, in* 2 *Civil Law Translations* § 179, at 91 (1966) (possession of apparent servitude is lost by changes made on the servient estate which make exercise of the servitude impossible or represent an obstacle to its exercise). Accordingly, we hold that the railroad did not commence possession on behalf of the City. The railroad was therefore presumed to possess as owner. La.Civ.Code Ann. art. 3427. The City has not rebutted this presumption. River City is entitled to be maintained in possession of the land.

### III. Water Street

The district court held as to one segment of the property called Water Street that NO 2000 did establish its possessory rights. The City cross-appeals the court's granting NO 2000 possession of Water Street. Unlike the property underlying other streets at issue, the property underlying Water Street was not listed in the 1912 Ordinance as one of the streets to be closed and was never dedicated to public use via sales of adjacent properties

---

[7]River City also asks that we rule on its contention that the City's servitude has been terminated due to abandonment or prescriptive non-use. This question relates to ownership rather than possession of the servitude and is not at issue in a possessory action.

with reference to the street or to a map depicting the street.

The City's appeal is based on the erroneous assumption that it would have obtained full ownership of the land underlying Water Street through an implied dedication (if one occurred). We reject the notion that implied dedication transfers ownership, as discussed above. Moreover, the City has not shown the district court's finding of no dedication of Water Street to be clearly erroneous.

The railroad has possessed the land underlying the former Water Street as well as the other streets at issue, and the City has not shown such possession to have been precarious. The judgment of the district court is affirmed inasmuch as it maintains NO 2000 in possession of the Water Street property.

## IV. Conclusion.

We affirm in part the judgment of the district court with respect to the ruling maintaining NO 2000 in possession of the property underlying Water Street. We reverse in part regarding the land underlying the other closed streets and remand for entry of judgment maintaining River City in quiet possession of such land.

AFFIRMED in part, REVERSED in part, and REMANDED.

11