STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

03-767


THE SOUTHERN AMUSEMENT CO., INC.

VERSUS

PAT'S OF HENDERSON SEAFOOD & STEAK, INC.


**********
APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 98-3846
HONORABLE KENT SAVOIE, DISTRICT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********


Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Glenn B. Gremillion, Judges.

**Cooks, J., dissents and assigns written reasons.**


                              **AFFIRMED IN PART; REVERSED**
                              **IN PART; AND RENDERED.**


**C. Eston Singletary, Jr.**
**Scofield, Gerard, Veron, Singletary & Pohorelsky**
**1114 Ryan Street**
**Lake Charles, LA 70602**
**(337) 433-9436**
**Counsel for Plaintiff/Appellant**
        **The Southern Amusement Co., Inc.**

**Russell J. Stutes, Jr.**
**Scofield, Gerard, Veron, Singletary & Pohorelsky**
**1114 Ryan Street**
**Lake Charles, LA 70602**
**(337) 433-9436**
**Counsel for Plaintiff/Appellant**
**The Southern Amusement Co., Inc.**

**Rudie Ray Soileau, Jr.**
**717 Pujo Street**
**Lake Charles, LA 70601**
**(337) 433-0110**
**Counsel for Defendant/Appellee**
**Pat's of Henderson Seafood & Steak,Inc.**

**David Dwight**
**1400 Ryan Street**
**Lake Charles, LA 70601**
**(337) 439-3138**
**Counsel for Defendant/Appellee**
**Pat's of Henderson Seafood & Steak, Inc.**

**Christopher E. John**
**P.O. Box 900**
**Lake Charles, LA 70602-0900**
**(337) 491-1547**
**Counsel for Intervenor/Appellee**
**City of Lake Charles**

GREMILLION, Judge.

The plaintiff, Southern Amusement Company, Inc., appeals the judgment of the trial court denying its motion for a new trial on the issue of whether a private and public servitude exists on property owned by the defendant, Pat's of Henderson Seafood and Steaks, Inc. We affirm in part, reverse in part, and render.

**FACTS**

On September 30, 1977, Joseph and Shirley McIver, Jr. and Robert and Mary Elam purchased a tract of land containing 28.56 acres, located in Section 3, Township 10 South, Range 8 West, from the Board of Trustees of State Colleges and Universities of the State of Louisiana and McNeese State University. The property, located in Lake Charles, Louisiana, is bordered on the east by the Interstate 210 Bypass, on the south by Avenue "J," on the west by Kayouche Coulee, and on the north by private property. Contained within the Cash Deed is the following language:

> As a part of the consideration for this sale, Vendor and Vendee hereby dedicate to the City of Lake Charles, all road rights-of-way shown on the attached plat of survey dated June 7, 1977, Whitaker & Webb, Civil Engineers, for Jacox Lane, Von Blond Drive, and over the North 30 feet and the Easterly 50 feet of the property.

A notation on the attached survey of the property reiterates: "1. Vendor and Vendee hereby dedicates for public use all Right of Ways for roads and streets as shown above." This Cash Deed was filed in the conveyance records of Calcasieu Parish on October 12, 1977. An Act of Correction of Deed was filed in the conveyance records by these same parties on October 19, 1981, whereby a correction was made to the point of commencement of the legal description of the property. Otherwise, the contents of the Cash Deed remained unchanged.

1

This lawsuit stems from the reservation of a servitude for a proposed road contained in a February 6, 1981 Cash Sale Deed, in which the McIvers and the Elams conveyed a portion of the above tract to Richard and Nancy Perioux. The property sold was located in the southeastern corner of the tract and is bounded on the east by the Interstate 210 Bypass, on the south by Avenue J, and on the north and west by property owned by the Elams and McIvers, which includes a subdivision to the north known as "The Hamlet." The Cash Sale Deed contains the following language:

> Thence North 89E 57' 30" West 388.25 feet along the South line of Lots 1, 2, and 3 of Block 3 of "The Hamlet" Subdivision to the point of commencement, containing 97,219 square feet of area and **subject to a 50 foot wide easement for a proposed road along the East side** and a drainage easement along the South side.

(Emphasis added).

On April 26, 1982, the Periouxs executed a Cash Deed in favor of Pat's of Henderson Seafood and Steaks, Inc., which conveyed the above described property to them. The Cash Deed contained the same language reserving the fifty-foot easement for a proposed road.

Southern Amusement also owned property located in Section 3, Township 10 South, Range 8 West, located north of the McIver and Elam tract and bounded north by Broad Street. In 1988, Wal-Mart Properties, Inc. approached Southern Amusement with the intent of purchasing a portion of its property in order to construct a Sam's Club. Southern Amusement was amenable to the proposition, however, it requested that the deal be structured as an act of exchange for tax purposes. As part of the exchange, Wal-Mart agreed to purchase a tract of land from

2

the McIvers and Elams and transfer it, along with a sum of money, to Southern Amusement, in exchange for the property fronting Broad Street. Wal-Mart purchased the property, located just north of "The Hamlet" Subdivision, from the McIvers and Elams, on April 26, 1988. The Cash Deed contained the following language:

> [C]ontaining 8.00 acres more or less, together with a servitude and/or road right-of-way 50 feet wide running from the Southeast corner of this property along the West right-of-way line of I-210 By Pass, 440 feet more or less to the North line of Avenue "J". Sellers agree to pay the cost of paving suitable for dedication of that portion of the servitude affecting Lot 1 of Block 2 and Lot 1 of Block 3 of Hamlet Subdivision. Sellers convey to purchaser the joint use of the servitude sellers reserved in that sale recorded in COB 1416, page 488, corrected in COB 1648, page 596.

The Act of Exchange was executed by Wal-Mart and Southern Amusement on April 25 and 27, 1988, wherein Southern Amusement became the owner of the afore described eight acres.

In 1997, Southern Amusement became interested in developing its property and wished to gain access to the southern portion through the servitudes contained in the above described conveyances. In furtherance of this desire, George Crosby, the vice-president and secretary of Southern Amusement, contacted Richard Perioux about executing a document formalizing all of the servitudes listed in the conveyances. Although Perioux agreed to discuss the matter with Crosby, he refused to sign the document, on the advice of his attorney, based upon a belief that the servitude across the easternmost portion of his property had prescribed after ten years of nonuse.

On July 1, 1998, Southern Amusement filed a Petition for Declaratory Judgment seeking a declaration that a servitude granted by the Periouxs, and later

3

Pat's, in favor of the Elams and McIvers, and later Southern Amusement, still exists and has not prescribed through nonuse. In response, Pat's filed a peremptory exception of prescription arguing that the predial servitude had prescribed through nonuse of ten years. Following a hearing, Judge Gregory Lyons sustained Pat's exception of liberative prescription and dismissed Southern Amusement's petition for declaratory judgment with prejudice. Judgment was rendered in this matter on May 10, 1999.

On May 24, 1999, Southern Amusement filed a motion for a new trial alleging evidence of the public servitude granted in favor of Lake Charles by the Elams and McIvers and the Board of Trustees and McNeese in their 1977 Cash Deed and the 1981 correction. It argued that the newly discovered servitude established a formal dedication of the property and transferred ownership of the property to Lake Charles. Thus, it argued that the servitude could not be lost through nonuse. In the alternative, it argued that an implied dedication was created and that use of the road had occurred, as found by the trial court.

On April 24, 2000, Lake Charles intervened in this matter seeking a declaratory judgment that it owned the property over which the public servitude was dedicated, via the 1977 Cash Deed and the 1981 Act of Correction of Deed, or, in the alternative, that the dedication established a servitude of public use, which had not prescribed. Following a hearing on the motion, Judge D. Kent Savoie, sitting for the then retired Judge Lyons, denied Southern Amusement's motion for a new trial and, further, denied Lake Charles' petition in intervention. This appeal by Southern Amusement followed.

4

**ISSUES**

On appeal, Southern Amusement raises numerous errors allegedly committed by the trial court. It argues that the trial court erred in finding that both the private and public servitudes had prescribed through nonuse and that the construction of a fence by Pat's did not suspend the running of prescription. It further argues that the trial court committed legal error in finding that the sole purpose of the servitudes was for the construction of a road from Siebarth Drive to Broad Street, in relying on parol evidence to reach that conclusion, and by not applying the public records doctrine to defeat an alleged oral agreement between the Elams and McIvers and the Periouxs. Southern Amusement next argues that the trial court erred in denying its motion of a new trial, without considering its good grounds, and in finding that the 1977 Cash Deed did not formally dedicate full ownership of the subject strip of land, or, in the alternative, that it did not formally dedicate a public servitude. Finally, it argues that the trial court erred in finding that the public servitude had prescribed through nonuse, even though it found that the servitude had been used, but not for the supposed purpose of traveling from Siebarth Drive to Broad Street.

**MOTION FOR NEW TRIAL**

The Louisiana Code of Civil Procedure provides two instances under which a motion for new trial will be granted. Louisiana Code of Civil Procedure Article 1972 provides peremptory grounds under which such a motion will be granted:

1. When the verdict or judgment appears clearly contrary to the law and the evidence.

5

2. When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.

3. When the jury was bribed or has behaved improperly so that impartial justice has not been done.

Louisiana Code of Civil Procedure Article 1973 further provides that a motion for new trial may also be granted "if there is good ground therefore, except as otherwise provided by law." In both instances, the trial court is accorded vast discretion in deciding whether to grant the motion; its decision whether to do so is reviewed pursuant to the abuse of discretion standard of review. *Davis v. Coregis Ins. Co.*, 00-475 (La.App. 3 Cir. 12/27/00), 789 So.2d 7, *writ denied*, 01-0292 (La. 3/30/01), 788 So.2d 1192.

Southern Amusement based its motion for new trial on two grounds: 1) its late discovery of the public servitude contained in the 1977 Cash Deed, as acknowledged in the 1981 Act of Correction of Deed, and 2) for other good grounds. The trial court denied Southern Amusement's first ground since its counsel admitted that he could have discovered the existence of the public servitude prior to the hearing on the exception had he performed a title search on the property. Southern Amusement does not appeal this finding. Rather, it argues that the trial court failed to rule on its argument that the motion for new trial should have been granted for other good grounds raised by it. After reviewing the record, we find that a private servitude was never created in favor of the McIvers and Elams, and later Southern Amusement. Accordingly, we affirm the trial court's denial of Southern Amusement's motion for new trial with regard to the existence of a private servitude in its favor. However, we do find that a servitude of public use was created through

6

a formal dedication in favor of Lake Charles.

**Private Servitude**

Louisiana Civil Code Article 646 provides that a "predial servitude is a charge on a servient estate for the benefit of a dominant estate. The two estates must belong to different owners." Louisiana Civil Code Article 647 further provides that there must be a benefit to the dominant estate. Predial servitudes may be established by title, and if so, their use and extent are regulated by the title creating them. La.Civ.Code art. 697. They may also be established in any way in which immovables may be transferred. La.Civ.Code art. 722. In interpreting predial servitudes, "Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate." La.Civ.Code art. 730.

> When a predial servitude is created by title, the intention of the parties to place a charge on one estate for the benefit of another estate, and the extent of the charge, must be expressed on the face of the title document and cannot be inferred or implied from vague or ambiguous language. The title document must also reasonably identify the dominant estate *and* the servient estate.

*Mardis v. Brantly*, 30,773, pp. 2-3 (La.App. 2 Cir. 8/25/98), 717 So.2d 702, 704, *writ denied*, 98-2488 (La. 11/20/98), 729 So.2d 563 (citations omitted); *see also Dautreuil v. Degeyter*, 436 So.2d 614 (La.App. 3 Cir. 1983). Moreover, in *Palomeque v. Prudhomme*, 95-0725, p. 7 (La. 11/27/95), 664 So.2d 88, 93, the supreme court stated:

> Predial servitudes are in derogation of public policy because they form restraints on the free disposal and use of property. Therefore, servitudes are not entitled to be viewed with favor by the law and can never be sustained by implication. *Buras Ice Factory Inc. v. Dept. of Hwys. of La.*, 235 La. 158, 103 So.2d 74, 80 (1958); *Gravolet v. Bd. of Commissioners*, 598 So.2d 1231, 1234 (La.App. 4th Cir.1992); *see also*, 1 DOMAT, THE CIVIL LAW IN ITS NATURAL ORDER, tit. XII, sec. 1, at 435 (Strahan, trans., Cushing ed., 2d ed. 1861). Any doubt as to the existence, extent or manner of exercise of a predial servitude must be

7

resolved in favor of the servient estate. La.Civ.Code art. 730; *McGuffy v. Weil*, 240 La. 758, 125 So.2d 154, 158 (1960).

The alleged private servitude stems from the 1981 conveyance from the Elams and McIvers to the Periouxs. Contained in the property description of the tract is the language:

> Thence North 89E 57' 30" West 388.25 feet along the South line of Lots 1, 2, and 3 of Block 3 of "The Hamlet" Subdivision to the point of commencement, containing 97,219 square feet of area and subject to a 50 foot wide easement for a proposed road along the East side and a drainage easement along the South side.

The language purporting to establish the private servitude is "subject to a 50 foot wide easement for a proposed road along the East side." However, after reviewing all of the documents submitted into evidence, consisting of all conveyances commencing in 1977 and ending with Wal-Mart's exchange with Southern Amusement in 1988, we find that this language did not establish a predial servitude of right of passage. The language fails to reasonably identify a dominant estate nor does it indicate the intent of the parties to place a charge on the servient estate in favor of a dominant estate. Rather, we find that the language merely acknowledges the previous dedication to Lake Charles, of the fifty-foot right-of-way contained in and confirmed in the 1977 Cash Deed and the 1981 Act of Correction of Deed, respectively. Since we find ambiguity in the attempted establishment of a predial servitude, this issue must be resolved in favor of Pat's. Accordingly, the trial court's denial of Southern Amusement's motion for a new trial on the issue of a private servitude is affirmed.

**Public Servitude**

On the other hand, we find that the trial court abused its discretion in

8

denying Southern Amusement's motion for new trial based on a finding that the servitude created in the 1977 Cash Deed and 1981 Correction of Cash Deed was an informal servitude requiring proof of intent to dedicate and acceptance by the public.

A review of the jurisprudence indicates that there are four ways in which public servitudes may be created. In *St. Charles Parish School Board v. P & L Investment Corp.*, 95-2571, pp. 4-7 (La. 5/21/96), 674 So.2d 218, 221-22, the supreme court stated:

> Louisiana has never enacted a comprehensive scheme of dedication to public use. *Garrett v. Pioneer Production Corporation*, 390 So.2d 851, 854 (La.1980). However, Louisiana courts have recognized four modes of dedication: formal, statutory, implied, and tacit. A landowner may make a formal dedication of a road by virtue of a written act, such as a deed of conveyance to the police jury of the parish. *Frierson v. Police Jury of Caddo Parish*, 160 La. 957, 107 So. 709 (1926). The written act may be in notarial form or under private signature. YIANNOPOULOS, PROPERTY § 95, at 204-205. A formal dedication transfers ownership of the property to the public unless it is expressly or impliedly retained. YIANNOPOULOS, PROPERTY § 95, at 208-209. If the landowner retains ownership of the property, the public acquires a servitude of public use.
>
> Statutory dedication occurs when a landowner subdivides real estate in accordance with the requirements of La.R.S. 33:5051. In order to effect a statutory dedication, complete and detailed compliance with the statute is not required; substantial compliance will suffice. *Garrett*, 390 So.2d at 856. La.R.S. 33:5051 provides for the subdivision of real estate into squares or lots with named streets and for the dedication to public use of all streets, alleys, and public squares on the map. A statutory dedication vests ownership in the public unless the subdivider reserves ownership of streets and public places and grants the public only a servitude of use. *Arkansas-Louisiana Gas Co. v. Parker Oil Co. Inc.*, 190 La. 957, 183 So. 229, 238 (1938) (on rehearing).
>
> Implied dedication is a common law doctrine recognized by the courts of this state. *Ford v. City of Shreveport*, 204 La. 618, 16 So.2d 127, 128 (1943). A dedication by implication consists of the assent of the owner, use by the public, and maintenance by the municipality. *Wyatt v. Hagler*, 238 La. 234, 114 So.2d 876, 878 (1959). Because implied dedication lacks the formalities and safeguards of formal or

9

statutory dedication, courts have required "a plain and positive intention to give and one equally plain to accept." *Carrollton Rail Road Co. v. Municipality No. Two*, 19 La. 62, 71 (1841). Courts have also found an implied dedication when the owner of a tract of land subdivides it into lots, designates streets or roads on a map, and then sells the property or any portion of it with reference to the map. *James v. Delery*, 211 La. 306, 29 So.2d 858, 859 (1947). An implied dedication establishes a servitude of public use. *Arkansas-Louisiana Gas Co. Inc.*, 183 So. at 240; *Becnel v. Citrus Lands of Louisiana, Inc.*, 429 So.2d 459 (La.App. 4th Cir.), *writ denied*, 437 So.2d 1147 (La.1983). *See, Missouri Pacific Railroad Co. v. City of New Orleans*, 46 F.3d 487 (5th Cir.1995).

> A tacit dedication of a strip of land for use as a public road occurs when the requirements of La.R.S. 48:491 are met. La.R.S. 48:491 provides, in pertinent part,

> B. (1)(a) All roads and streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by the authority of a parish governing authority within its parish, or by the authority of a municipal governing authority within its municipality, shall be public roads or streets, as the case may be, if there is actual or constructive knowledge of such work by adjoining landowners exercising reasonable concern over their property.

> If a road is maintained for a period of three years by authority of the parish governing authority, the public acquires a servitude of passage by tacit dedication. *Robinson v. Beauregard Parish Police Jury*, 351 So.2d 113, 115 (La.1977). Token maintenance or an occasional brushing up of a road is insufficient to establish a tacit dedication for public use. *Robinson*, 351 So.2d at 115.

Judge Savoie held that the servitude contained in the 1977 Cash Deed was created by an informal dedication, presumably an implied dedication. He further found that the implied dedication by the parties created a servitude of public use, which was never formally accepted by Lake Charles and was lost through prescription of ten years of nonuse. However, we find that the dedication created was a formal dedication, rather than an implied dedication, thus, formal acceptance was not required.

10

With regard to formal dedications, Professor Yiannopoulos stated:

> In a strict sense, a formal dedication is a donation of a thing or of its use to the public for designated public purposes. As a donation, a formal dedication ought to conform with the requirements of substance and form governing gratuitous dispositions. For example, the act of dedication ought to be made in authentic form and it ought to be accepted by the public. Examples of this form of dedication are found in Louisiana jurisprudence.
>
> However, strict compliance with the requirements governing donations would be cumbersome. It would discourage or even defeat dedication in may cases. For these reasons Louisiana courts have taken a much broader view of formal dedication that has no foundation in legislative texts. *According to the jurisprudence, a formal dedication is a donation to the public that may be made by a written juridical act. Accordingly, neither authentic form nor acceptance of the donation by the public is required. There must be, however, a clear intent to dedicate.*

A.N. YIANNOPOULOS, PROPERTY § 97, at 211-12 (2 Louisiana Civil Law Treatise 2001) (footnotes omitted) (emphasis added).

Here, the servitude is contained in a written juridical act, the 1977 Cash Deed, and confirmed in a notarial act, the 1981 Act of Correction of Deed. These acts clearly reveal an intent to dedicate the road right-of-ways, including the fifty-foot right-of-way, to Lake Charles. Although we agree with the trial court's finding that the parties intended to retain ownership of the underlying property, a formal servitude of public use still exists, for which acceptance was not required.

Accordingly, we find that the trial court abused its discretion in finding that the servitude at issue was an implied dedication which required acceptance by Lake Charles. However, we shall not remand this matter for a new trial since the record is complete on this issue. We shall conduct a de novo review and render judgment on whether the public servitude in favor of Lake Charles has prescribed.

11

*Graves v. Lou Ana Foods Inc.*, 604 So.2d 150 (La.App. 3 Cir. 1992).

**PUBLIC SERVITUDE**

Initially, we must determine whether there was a formal dedication of a servitude of public use or a transfer of title to the property. Upon review, we find that the 1977 Cash Sale Deed established a servitude of public use in favor of Lake Charles, via a fifty-foot right-of-way along the eastern edge of the property conveyed. As noted by Professor Yiannopoulos, there must be a clear intent to dedicate and, to that end, there must be a clear dedication of title to the dedicated property in order to transfer ownership. A right of way is defined in *Blacks Law Dictionary*, 1326 (6th Ed.1990), as a "[t]erm used to describe a right belonging to a party to pass over land of another." Further, "As used with reference to right to pass over another's land, it is only an easement; and grantee acquires only right to a reasonable and ususal enjoyment thereof with owner of soil retaining rights and benefits of ownership consistent with the easement." *Id.* Accordingly, we find that the dedication contained in the 1977 Cash Sale Deed was the dedication of a servitude of public use over the property rather than a formal dedication transferring ownership of the underlying property.

We are cognizant of our learned colleague's concerns in her dissent but, in our opinion, it is clear that only the right-of-way was dedicated. Had the words "right-of-way" not been used, then we might have viewed this matter differently.

A servitude of public use created by formal dedication may be terminated in several manners: by formal revocation, evidence of intent to abandon, relocation of the road, and through ten years prescription of non-use. *State, Dep't of Transp.*

12

*and Dev. v. Scramuzza*, 96-1796, 96-1820 (La. 4/8/97), 692 So.2d 1024; *Robinson v. Beauregard Parish Police Jury*, 351 So.2d 113 (La.1977).

In this instance, the right-of-way has not been developed and there has been no formal revocation by Lake Charles to revoke the dedication. Thus, we must determine whether the dedication has been lost through prescription of ten years of nonuse. La.Civ.Code art. 753.

> Prescription of nonuse begins to run for an affirmative servitude from the date of last use. La. C.C. art. 754. An essential element of proof in an action involving prescription of nonuse for ten years under La.C.C. Art. 753 is that the servitude was in fact not used for any purpose consistent with its grant. *See, Ashland Oil Company, Inc. v. Palo Alto, Inc.*, 615 So.2d 971, 973-974 (La.App. 1st Cir.1993), and cases cited therein. Prescription of nonuse is subject to the general rules regarding suspension and interruption of prescription.

*Palgrave v. Gros*, 02-249, p. 4 (La.App. 5 Cir. 9/30/02) 829 So.2d 579, 582. The burden of proof is on the owner of the dominant estate to prove that the servitude has been used. *Tilley v. Lowery*, 511 So.2d 1245 (La.App. 2 Cir. 1987). Since this is a servitude of public use, the burden is on Southern Amusement to prove use. Moreover, if the servitude has never been used, then the prescriptive period commences to run from the date the servitude was established and its exercise is possible. A.N. YIANNOPOULOS, PREDIAL SERVITUDES § 164 (4 Louisiana Civil Law Treatise 1997).

Crosby testified that he inspected the property Southern Amusement acquired from Wal-Mart on numerous occasions, prior to and subsequent to the 1988 exchange. He stated that he accessed the property on more than one occasion through Pat's parking lot, by driving to the eastern boundary of Pat's parking lot and then onto the right-of-way, which was a grassy area, and then north towards Southern

13

Amusement's property. He also accessed it from the opposite direction. Crosby stated that he utilized the servitude after the exchange while having dirt hauled onto the property during the summer of 1988. He further testified that he traversed the servitude in 1992, when he visited the property in order to have it appraised. Sometime there after, he stated that a fence was erected across the servitude by Pat's.

The parties further stipulated that Roxenne Stodder would have testified that she accompanied Crosby to the property on more than one occasion in connection with the dirt work performed therein. However, she could not recall whether she traversed the servitude with Crosby. In support, Southern Amusement introduced into evidence checks it remitted to Stodder in 1988, for monitoring the dirt work. The parties further stipulated that Mack Love would testify that he and his father utilized the servitude in order to appraise Southern Amusement's property in 1992.

Allen Singletary, a real estate developer, testified that he accompanied Crosby numerous times to inspect Southern Amusement's property prior to and subsequent to the 1988 exchange. He further stated that he traveled over the servitude on foot in order to inspect the ditch located at the southeastern corner of Pat's property.

Robert Elam testified that he and his wife, along with the McIvers, conveyed the property owned by Pat's to the Periouxs, and that he was very familiar with the area. He stated that he managed The Hamlet Subdivision until approximately 1991, but he could not recall anyone using the fifty-foot right-of-way during the time he was there. Although he could not state with assurance that the servitude was never used, he stated that it would almost be impossible due to

14

obstructions located just north of Pat's, within the fifty-foot public right-of-way. Elam did, however, recall that Southern Amusement trucked in dirt to its property in 1988.

James Knapp, a registered land surveyor, testified that he surveyed the property at the request of Pat's attorney in 1999. He stated that he located the fifty-foot right of way along the eastern boundary of Pat's property, as well as along the eastern edge of The Hamlet Subdivision. He testified that there is no obstruction along the fifty-foot right-of-way located on Pat's property. However, he did state that there are obstructions located just north of the fifty foot right-of-way on Pat's property, which either encroach into or are located within the fifty foot right-of-way located adjacent to and just north of the right-of-way on Pat's property. These include the side of a residence, two concrete foundations, and three clothes line poles.

Richard Perioux testified he was aware of the fifty-foot right-of-way at the time he purchased the property. When they built Pat's, he stated that he paved the parking lot of the restaurant up to, but not including, the right-of-way. Perioux testified that he normally works eighty hours per week at Pat's, including maintaining the outside of the property. He testified that he only saw Crosby drive across the right-of-way once, a few months prior to the March 1998 trial. Prior to that, he stated that he had never seen anyone drive across it. However, he admitted that there were substantial time periods during the evenings, on Mondays, and on holidays, when he was not present at the restaurant. Thus, he could not positively state that Crosby had never driven on the right-of-way prior during those times. He further testified that he constructed a fence across the entire northern and western boundary of Pat's

15

property, ion 1994, including the fifty-foot right-of-way.

The parties further stipulated that Nancy Perioux, Perioux's wife, would testify that she had no personal knowledge of anyone using the servitude area as a road.

After reviewing the evidence, we find that Southern Amusement has failed to prove that the servitude of public use, the fifty-foot right-of-way, has not prescribed through ten years of nonuse. Although Crosby testified that he drove over the servitude numerous times in 1988, the public servitude was intended for a road right-of-way. "A member of the public has the right to use things that are subject to public use in accordance with their nature or destination." YIANNOPOULOS, PROPERTY § 91, at 201; *see Worthen v. DeLong*, 99-1149 (La.App. 1 Cir. 6/23/00), 763 So.2d 820. However, any doubt as to the manner of exercise of the servitude is resolved in favor of the servient estate. Here, although the public servitude was traversed several times by Crosby, and on other occasions by Singletary and Love, it was never developed as a road. Since the parties intended that the servitude be used as a public road, which was never developed, we find that the public servitude established in favor of Lake Charles, in 1977, and confirmed in 1981, has prescribed through ten years prescription of nonuse. Accordingly, judgment is rendered in favor of Pat's of Henderson Seafood and Steaks, Inc. finding that the servitude of public use across the eastern most portion of its property has prescribed through nonuse.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment denying Southern Amusement's motion for new trial on the issue of a private servitude. We

16

reverse the judgment on the issue of a public servitude and we now order, adjudge, and decree that there be judgment in favor of the defendant-appellee, Pat's of Henderson Seafood and Steaks, Inc., finding that a servitude of public use located on its property has prescribed through ten years of nonuse.  The costs of this appeal are assessed to the plaintiff-appellant, Southern Amusement Company, Inc.

**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**

THE SOUTHERN AMUSEMENT CO., INC.

VERSUS

PAT'S OF HENDERSON SEAFOOD & STEAK, INC.

**COOKS, J., dissents.**

This controversy stems from language in a Cash Deed dated September 30,

1977 in favor of the City of Lake Charles for the construction of a road:

> **As a part of the consideration for this sale**, **Vendor and Vendee hereby dedicate to the City of Lake Charles, all road rights-of-way** shown on the attached plat of survey dated June 7, 1977, Whitaker & Webb, Civil Engineers, for Jacox Lane, Von Blond Drive, and over the North 30 feet and the Easterly 50 feet of the property. (Emphasis added.)

The majority finds this deed does not evidence an intent to dedicate to the

public even though the words used in the document are unambiguous and subject to

only one interpretation. The majority finds the Cash Deed only creates a servitude

in favor of the public which can extinguished by ten years non-use. I respectfully

disagree with the majority's characterization of the language in the deed. The 1977

Cash Deed clearly provides the Vendor and Vendee "hereby dedicate to the City of

Lake Charles" 50 feet for the construction of a road. A plat of survey was attached

to the Cash Sale and recorded in the Conveyance Records. The City was not required

to accept the dedication and ownership transferred to the City at that point.

Additionally, the majority opinion does not address the Petition of Intervention

by the City of Lake Charles. The City intervened in the suit asserting its ownership

of the property based on the 1977 Cash Deed. The City's petition contends: "When

1

property has been formally dedicated, it vests title in the dedicated land to the public rather than merely a servitude. It cannot be lost by prescription of non-use, only an express revocation, so actual use of the road by the City or the public is immaterial." This is a correct statement of the law. Professor Yiannopoulos, cited in the majority opinion, provides:

> A landowner may make a formal dedication of a road by virtue of a written act, such as a deed of conveyance to the police jury of the parish. *Frierson v. Police Jury of Caddo Parish*, 160 La. 957, 107 So. 709 (1926). The written act may be in notarial form or under private signature. YIANNOPOULOS, PROPERTY § 95, at 204-205. A formal dedication transfers ownership of the property to the public unless it is expressly or impliedly retained. YIANNOPOULOS, PROPERTY § 95, at 208-209. If the landowner retains ownership of the property, the public acquires a servitude of public use.

Additionally, as Professor Yiannopoulos points out a formal acceptance by the public is not required:

> According to the jurisprudence, a formal dedication is a donation to the public that may be made by a written juridical act. Accordingly, neither authentic form nor acceptance of the donation by the public is required. There must be, however, a clear intent to dedicate. YIANNOPOULOS, PROPERTY § 97, at 211-12.

Louisiana jurisprudence has recognized four modes of dedication: formal, statutory, implied, and tacit. Formal and statutory dedication conveys ownership while implied or tacit conveys only a servitude. Statutory dedication occurs when a landowner subdivides real estate in accordance with the requirements of La.R.S. 33:5051. In the case of a formal dedication, contained in a conveyance deed, as in the present case, acceptance by the public is not necessary. If the deed evidences a clear intent to dedicate, ownership is conveyed. *Schmit v. St. Bernard Parish Police Jury*, 504 So. 2d 619 (La.App. 4 Cir. 1987).

As stated in *Anderson v. Police Jury of the Parish of East Feliciana*, 452 So. 2d 730 (La.App. 1 Cir. 1984):

2

After extensive review of the jurisprudence and legal commentary on the subject [See, in particular, Comment, *The Third Dimension of Dedication in Louisiana*, 30 La.L.Rev. 583 (1970)] we find that there are properly three distinct categories of dedication:

(1) statutory, which is accomplished when La.R.S. 33:5051 is substantially complied with. It conveys ownership to the public. *Parker,* 183 So. At 240.

(2) formal non-statutory, which is created whenever there exists some formal, express act by the owner which clearly shows an intent to dedicate. We hold that, absent a clear expression to the contrary, this dedication also conveys ownership and applies to the situation in which La.R.S. 33:5051 is not substantially complied with. See *Banta,* 200 So.2d at 112-3; cf. *Parker,* 183 So. At 240.

(3) informal, which would include those forms of dedication in which the law deems it necessary to infer an intent to dedicate from the owner's actions. This creates only a servitude and acceptance by the public is necessary. [FN2]

> FN2. We note that in A. Yiannopoulos, Property Secs. 61-66 in 2 Louisiana Civil Law Treatise 186-201 (2nd ed. 1980), Professor Yiannopoulos divides informal dedication into two separate categories - - tacit dedication and implied dedication - - resulting in four classifications, instead of three.

**Clearly, the dedication involved in this case falls into the second category. It is unnecessary for us, however, to classify the dedication as being one which transfers ownership or only a servitude since for our purposes it is necessary only to determine that the dedication is a formal dedication for us to establish the proper procedural framework.** (Emphasis added.)

The language in the 1977 Cash Deed clearly evidences a formal dedication to the public. The language provides: " As a part of the consideration for this sale, Vendor and Vendee *hereby dedicate. . .*" The use of the word "dedicate" is all that is required for us to find a formal dedication occurred and for ownership to transfer to the public. We need not infer an intent or examine whether the actions of the owner evidenced an intent to relinquish control or whether the property was used for a road. The law is clear, once a dedication is made to the public, unless the owner *expressly*

3

reserves ownership, title passes to the public. See also, *St. Charles Parish School Bd. v. P & L Inv. Corp.,* 95-2571 (La. 5/21/96), 674 So.2d 218. The majority opinion will create havoc with long established principles of property law.