STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-703

TOM CLEMENT

VERSUS

CITY OF LAKE CHARLES, ET AL.

**********
APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2008-5293
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**********
ULYSSES GENE THIBODEAUX
CHIEF JUDGE
**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Billy Howard Ezell, Judges.

Amy, J., concurs.

REVERSED AND RENDERED.

Maurice L. Tynes
4839 Ihles Rd
Lake Charles, LA 70605
Telephone: (337) 479-1173
COUNSEL FOR:
        Plaintiff/Appellant - Tom Clement

John Richard Pohorelsky
Scofield, Gerard, Singletary & Pohorelsky
P. O. Drawer 3028
Lake Charles, LA 70602-3028
Telephone: (337) 433-9436
COUNSEL FOR:
        Defendant/Appellee - Turnberry Row Homeowner's Association

Christopher E. John
City of Lake Charles Legal Department
P. O. Box 900
Lake Charles, LA 70602-0900
Telephone: (337) 491-1547
COUNSEL FOR:
        Defendant/Appellee - City of Lake Charles

**Billy Edward Loftin Jr.**
**113 Dr. Michael DeBakey Drive**
**Lake Charles, LA 70601**
**Telephone:  (337) 310-4300**
**COUNSEL FOR:**
      **Defendant/Appellee - City of Lake Charles**

**THIBODEAUX, Chief Judge.**

Appellant, Tom Clement, asserts that the trial court erred by granting a summary judgment in favor of Turnberry Row Homeowner's Association ("Association") declaring Association the owner of Muirfield Drive in Lake Charles. The City of Lake Charles did not take a position in this case. We reverse because we find that the developer did not specifically reserve ownership of Muirfield Drive when it statutorily dedicated the right-of-way.

I.

## ISSUE

We shall consider whether the ownership of Muirfield Drive was transferred to the City of Lake Charles where the developer of the subdivision dedicated the "right-of-way of streets" to the perpetual use of the public pursuant to La.R.S. 33:5051 but did not expressly reserve ownership.

II.

## FACTS

Sometime in 1997, the developer of Turnberry Row Subdivision filed a plat for the subdivision in the Calcasieu Parish Public Records. The plat depicts various streets of the subdivision, including what is now Muirfield Drive. The plat contains the following dedicatory language:

Dedication:

> The right-of-way of streets shown hereon, if not previously dedicated, is hereby dedicated to the perpetual use of the public. Areas shown as servitudes for the use of utilities or drainage are granted for the general use of the public. No building, structure, or fence shall be constructed, nor shrubbery planted within the limits of any servitude so as to prevent or unreasonably interfere with any purpose for which the servitude was granted. The cart and fence

easements are not dedicated to the general use of the public.

To the south of Muirfield Drive, Clement owns a large lot that is not a part of Turnberry Row Subdivision. Although the dedicated right-of-way is fifty feet wide, Muirfield Drive is only twenty-five feet wide and occupies the central portion of the dedicated right-of-way. The developer erected a fence on the southern border of the right-of-way. This fence blocks Clement's access to Muirfield Drive.

Clement petitioned for a declaratory judgment on the issue of the right-of-way's ownership. Because the above-stated material facts are not in dispute and because the resolution of this case depends on the meaning of the dedicatory words, Association filed a motion for summary judgment. The trial court granted the motion declaring Association the owner of the right-of-way. Relying on this court's pronouncements in *Southern Amusement Co., Inc. v. Pat's of Henderson Seafood & Steak, Inc.*, 03-767 (La.App. 3 Cir. 3/31/04), 871 So.2d 630, the trial court reasoned that the phrase "right-of-way" used in the dedication conveyed to the City of Lake Charles a servitude and not ownership of the right-of-way. Clement appealed.

III.

**STANDARD OF REVIEW**

Appellate courts review summary judgments de novo. *Guilbeaux v. Times of Acadiana, Inc.*, 96-360 (La.App. 3 Cir. 3/26/97), 693 So.2d 1183, *writ denied*, 97-1840 (La. 10/17/97), 701 So.2d 1327.

IV.

**LAW AND DISCUSSION**

There are four ways of dedication to public use: formal; statutory; implied; and, tacit. *S. Amusement*, 871 So.2d 630. The latter two ways are

2

inapplicable in this case. Thus, we shall focus only on the first two, i.e., formal and statutory.

When one uses either formal or statutory modes of dedication, one may pass ownership of the property in question. *Id.* A landowner may formally dedicate a road by a written act, either notarial or under private signature, such as a deed of conveyance to the police jury of the parish. *Id.* (citing *Frierson v. Police Jury of Caddo Parish*, 107 So. 709 (La.1926); YIANNOPOULOS, PROPERTY § 95). "A formal dedication transfers ownership of the property to the public unless it is expressly or impliedly retained." *Id.* at 635 (citing YIANNOPOULOS, PROPERTY § 95).

When a landowner divides real estate according to La.R.S. 33:5051, he must make a formal dedication to public use "of all the streets, alleys, and public squares or plats" of the subdivision. La.R.S. 33:5051.[1] If the landowner substantially

---

[1]The following is the complete language of the statute:

§ 5051. Platting land into squares or lots before sale; filing map of land; limitations on dedications

A. Whenever the owner of any real estate desires to lay off the same into squares or lots with streets or alleys between the squares or lots and with the intention of selling or offering for sale any of the squares or lots, he shall, before selling any square or lot or any portion of same:

(1) Cause the real estate to be surveyed and platted or subdivided by a licensed land surveyor into lots or blocks, or both, each designated by number.

(2) Set monuments at all of the corners of every lot and block thereof.

(3) Write the lot designation on the plat or map, and cause it to be made and filed in the office of the keeper of notarial records of the parish wherein the property is situated and copied into the conveyance record book of such parish, and a duplicate thereof filed with the assessor of the parish, a correct map of the real estate so divided.

B. The map referenced in Subsection A of this Section shall contain the following:

(1) The section, township, and range in which such real estate or subdivision thereof lies according to government survey.

(2) The dimensions of each square in feet, feet and inches, or meters.

(3) The designation of each lot or subdivision of a square and its dimensions in feet, feet and inches, or meters.

complies with the requirements of La.R.S. 33:5051, a statutory dedication occurs. *S. Amusement*, 871 So.2d 630 (citing *Garrett v. Pioneer Prod. Corp.*, 390 So.2d 851 (La.1980)). There is no dispute in this case that a statutory dedication occurred. The only question is whether the developer dedicated ownership or a servitude of Muirfield Drive.

As the court pointed out in *Garrett*, La.R.S. 33:5051 "only speaks of dedication 'to public use.' It does not explain or define the nature of the right acquired by the public through dedication." 390 So.2d at 854. The supreme court then meticulously examined the history and jurisprudence on dedication to public use, including Roman, French, Spanish law, and our Civil Code. *Id.* The court noted that the Civil Code made a distinction between two different types of roads, highways and public roads. *Id.* The public owned the highways while it had only a servitude over the public roads. *Id.* The supreme court then mentioned that early jurisprudence classified rural roads as public roads, but ruled that ownership of urban streets, public

(4) The name of each street and alley and its length and width in feet, feet and inches, or meters.

(5) The name or number of each square or plat dedicated to public use.

(6) A certificate of the parish surveyor or any other licensed land surveyor of this state approving said map and stating that the same is in accordance with the provisions of this Section and with the laws and ordinances of the parish in which the property is situated.

(7) A formal dedication made by the owner or owners of the property or their duly authorized agent of all the streets, alleys, and public squares or plats shown on the map to public use.

C. Formal dedication of property as a road, street, alley, or cul-de-sac shall impose no responsibility on the political subdivision in which the property is located until:

(1) The dedication is formally and specifically accepted by the political subdivision through a written certification that the road, street, alley, or cul-de-sac is in compliance with all standards applicable to construction set forth in ordinances, regulations, and policies of the political subdivision, which certification may be made directly on the map which contains the dedication; or

(2) The road, street, alley, or cul-de-sac is maintained by the political subdivision.

squares, and quays belonged to the public. *Id.* The court concluded that even prior to the existence of the statute on dedication, "there can be no doubt that the prevailing view was that ownership of *municipal streets* would ordinarily vest in the public body." *Garrett*, 390 So.2d at 855 (emphasis added).

The public policy behind the transfer of ownership in the dedication was the concern over

> much harm [that] may result from the retention in remote dedicators of the fee in narrow strips of land, valueless for many years, because of their public or quasi-public use which, on the abandonment of such use, become valuable for private purposes. Certainly such agreements are likely to be productive of disputes and litigation.

*Id.* (quoting *Richard v. City of New Orleans*, 197 So. 594, 603-604 (La.1940)).

The supreme court concluded that the legislative intent advanced by what now is La.R.S. 33:5051 was "to retain the jurisprudential rule that dedication of municipal streets vested ownership in the public." *Id.* Thus, "a statutory dedication vests full ownership in the municipality, parish, or State of Louisiana, depending upon where the street or road is located." *Id.* (citations omitted). This is why in statutory dedication the public acquires title to the property "unless the subdivider *expressly reserves* ownership of streets *and* grants the public only a servitude of use." *Stonegate Homeowners Civic Ass'n v. City of Baton Rouge/Parish of E. Baton Rouge*, 01-2883, p. 4 (La.App. 1 Cir. 12/20/02), 836 So.2d 440, 443, *writ denied*, 03-786 (La. 5/9/03), 843 So.2d 407 (citing *St. Charles Parish Sch. Bd. v. P & L Inv. Corp.*, 95-2571 (La. 5/21/96), 674 So.2d 218, *abrogated by Cenac v. Pub. Access Water Rights Ass'n*, 02-2660 (La. 6/27/03), 851 So.2d 1006; *Ark.-La. Gas Co. v. Parker Oil Co.*, 183 So. 229 (La.1938) (on reh'g)) (emphasis added). *See also S. Amusement*, 871 So.2d 630.

5

Here, the trial court and Association relied heavily on this court's pronouncements in *Southern Amusement*, 871 So.2d 630. We find this reliance misguided for the following reasons. *Southern Amusement* did not involve statutory, i.e., La.R.S. 33:5051, dedication. There, a formal dedication was at issue. In statutory dedication, substantial compliance with La.R.S. 33:5051 transfers ownership of the land unless it was expressly retained. On the other hand, ownership to the formally-dedicated land passes "unless it is expressly *or impliedly* retained." *S. Amusement*, 871 So.2d at 635 (emphasis added).

Statutory dedication and formal dedication are two different modes of dedication. *See* YIANNOPOULOS, PROPERTY § 97 (4th ed. 2001). A landowner who ordinarily sells his land may never formally dedicate anything to the public use. On the other hand, a landowner who divides his property into lots with streets or alleys between them and then sells the lots must, in addition to performing other duties, dedicate to public use all the streets, alleys, and public squares or plats. La.R.S. 33:5051. Because in formal dedication the act of dedication is voluntary, there is a greater need to guard against a landowner's inadvertent mistakes. Thus, the landowner may impliedly retain ownership of the dedicated land without any specific reservation. *S. Amusement*, 871 So.2d 630; YIANNOPOULOS, PROPERTY § 97 (4th ed. 2001).

On the other hand, when the landowner dedicates his land under the compulsion of La.R.S. 33:5051, there is a greater need for the public to acquire ownership of the land for the reasons expressed previously in this opinion. Thus, if, after considering all the legal implications of ownership, the owner indeed desires to retain ownership of the dedicated land, he must not only grant a servitude to the public, but also expressly reserve the ownership in the act of dedication.

6

In this case, Association essentially agues that we should apply the rules governing formal dedications to statutory dedications. It maintains that because the language in the act of dedication contains the phrase "right-of-way," there is an express reservation of ownership.

Even if we accept, arguendo, that "right-of-way" means servitude, Association's argument fails. Grant of a servitude only *impliedly* reserves ownership. Thus, if the owner dedicates a servitude of public use, one may *infer* that the owner retained the title. This dedication of a servitude, as we held in *Southern Amusement*, is enough to retain ownership when we are dealing with voluntary formal dedication.

Here, the dedication was under the compulsion of La.R.S. 33:5051. As explained previously, to successfully retain title in statutory dedication it is not enough to impliedly reserve ownership. As this and other courts have held, the landowner must dedicate the servitude *and* expressly reserve ownership. Here, the language in the dedication contains no reservation.

Moreover, the dedicatory language is ambiguous even as to whether a servitude was dedicated. The resolution of this case does not require this court to assess the continuing viability of our holding in *Southern Amusement*, 871 So.2d 630. Nevertheless, to demonstrate the ambiguity of the phrase "right-of-way," we note that during oral arguments the attorney for Association and the attorney for the City of Lake Charles stated, on at least one occasion, that the issue in the case is who owns the "right-of-way." Thus, even the common use of this phrase demonstrates that it is synonymous with an area that is used or would be used for traffic and does not necessarily mean "servitude." We also note that "right-of-way" is defined as owned land as well as servitude in the City of Lake Charles regulations and in various parish ordinances throughout Louisiana.

7

Furthermore, in this case, the author of the dedicatory language knew how to grant a servitude of public use. Thus, the dedication states: "[a]reas shown as servitudes for the use of utilities or drainage are granted for the general use of the public."[2] The use of "the right-of-way of streets" instead of "the servitude of streets" in the dedication suggests that something other than a servitude was meant when it came to streets, particularly in light of the use of the term "servitude" in the very next sentence of the dedication. Additionally, supporting the distinction just mentioned, the right-of-way was "dedicated to the *perpetual* use of the public." (Emphasis added). On the other hand, consistent with the less-enduring nature of a servitude, areas shown as servitudes were "granted for the *general* use of the public." (Emphasis added).

We caution one's possible inference from this court's opinion in *Southern Amusement* that "right-of-way" is a term of art that signifies "servitude." The term of art that means servitude is "servitude." In *Southern Amusement,* the cash deed to the property in question contained the following dedicatory language:

> [a]s a part of the consideration for this sale, Vendor and Vendee hereby dedicate to the City of Lake Charles, all road rights-of-way shown on the attached plat of survey dated June 7, 1977, Whitaker & Webb, Civil Engineers, for Jacox Lane, Von Blond Drive, and over the North 30 feet and the Easterly 50 feet of the property.

871 So.2d at 631. Additionally, there were other transactions involving the property that included reservations for the proposed road as follows:

> [t]hence North 89 57' 30" ' [sic] West 388.25 feet along the South line of Lots 1, 2, and 3 of Block 3 of "The Hamlet" Subdivision to the point of commencement, containing

---

[2]While the dedication does not contain an express reservation of ownership of these areas, they are not streets, alleys, and public squares or plats subject to the compulsory dedication of La.R.S. 33:5051. Thus, the servitude of these areas is formally, not statutorily, dedicated to public use. As previously mentioned, in formal dedication ownership need not be expressly reserved. Thus, the ownership of these areas did not pass to the public even in the absence of an express reservation.

> 97,219 square feet of area and **subject to a 50 foot wide easement for a proposed road along the East side** and a drainage easement along the South side.

*Id.* at 632.

Thus, in *Southern Amusement* there were additional circumstances, distinct from the use of the phrase "right-of-way," which supported the proposition that only a servitude was dedicated. This court's conclusion in *Southern Amusement* that the phrase "right-of-way" conveyed only a servitude was reasonable considering the ambiguity of the phrase, factual circumstances just described, that the landowner may impliedly retain ownership, and the policy behind voluntary formal dedications. On the other hand, there are no facts, apart from the use of "right-of-way," in this case which would suggest that only a servitude was dedicated. To the contrary, as mentioned previously, the dedication's author, unlike the one in *Southern Amusement,* knew how to grant a servitude which suggests that something other than a servitude was dedicated. Thus, the factual circumstances of this case are distinguishable from the facts in *Southern Amusement*. Therefore, considering the different mode of dedication involved in *Southern Amusement* and the significant factual distinctions of this case, Association's and the trial court's reliance on *Southern Amusement* was misplaced.

## V.

## CONCLUSION

Summary judgment in favor of Turnberry Row Homeowner's Association is reversed. Costs of this appeal are assessed to Turnberry Row Homeowner's Association.

**REVERSED AND RENDERED.**

9