CALLOWAY, J., Pro Tempore.
|,Willow Chute Farms, LLC (“Willow Chute”), filed separate actions to quiet title on property in Bossier Parish and to cancel a servitude from the public records. The two cases were consolidated for trial. The trial court rendered a judgment setting the boundary between Willow Chute’s property and property owned by George and Susan McLemore (“the MeLemores”) along an old fence line and, where the fence line is not visible, in accordance with a 1984 act of exchange that established the servitude. The judgment held the servitude enforceable and rejected Willow Chute’s claim that it had prescribed due to nonuse. Willlow Chute filed a suspensive appeal. For the following reasons, we affirm the trial court’s judgment and remand with instructions.
FACTS
This case arises out of a servitude and boundary dispute between adjacent landowners, Willow Chute and the MeLemores. Willow Chute is the owner of an approximate 40.19-acre tract of land in Bossier Parish, which adjoins the MeLemores’ approximate 104-acre tract of land. The MeLemores’ tract is U-shaped and wraps around Willow Chute’s eastern boundary, northern boundary, and a small part of its western boundary.
In 1984, Fred E. Wemple, Jr., Willow Chute’s predecessor in title, and Armand W. Roos, Jr., Henry K. Roos, and Floyd D. Roos, the MeLemores’ predecessors in title, executed an agreement fixing the boundary between the properties at issue. On that same date, an act of exchange between Armand W. Roos, Jr., and the Wemples was recorded in the conveyance records of Bossier Parish whereby Roos conveyed to the | ¡Wemples a .31-acre triangular tract located near the southeast corner of the Willow Chute property. As it relates to this .31-acre tract, the act of exchange provided that “Armand W. Roos, Jr., hereby reserves unto himself, his heirs, and/or assigns a right of way and/or servitude of passage for purposes of ingress and egress across the [.31-acre triangular tract of land].” In exchange, the Wemples granted Armand W. Roos, Jr., a right of way and/or servitude of passage for purposes of ingress and egress across *269 the property south of the Roos land. The servitude, as set forth in the act of exchange, is a gravel road that runs northwesterly from Wemple Road to the Willow Chute property. The road is approximately a half mile long, is owned by Willow Chute, and provides access to the southern portion of the Roos (now McLemore) property.
In November 2012, the McLemores acquired their property by cash sale deed from Roos Properties, L.L.C., Henry Roos Properties, L.L.C., and Floyd Roos Properties, L.L.C. (“the Roos sellers”). The cash sale deed conveyed the property “together with all and singular the rights of way, servitudes, easements, appurtenances and hereditaments pertaining thereto, ... unto Buyer and Buyer’s heirs, successors and assigns forever.” It also provided that “[t]he sale is made subject to any servitudes, rights of way, mineral leases and any other instruments or encumbrances affecting the Property.”
After the McLemores’ acquisition, Willow Chute filed two lawsuits. The first suit, filed on December 11, 2012, against various Roos defendants and any heirs/assigns of Armand W. Roos, Jr., sought to cancel the ^servitude granted in the 1984 act of exchange. Willow Chute alleged that the servitude had not been used in over ten years and was thus prescribed. In the second suit, filed against the McLe-mores on February 4, 2013, Willow Chute sought to set the boundary between their respective tracts along an old fence line. Willow Chute alleged that the old fence separated the two tracts for longer than 30. years and that Willow Chute and its ancestors in title maintained continuous, uninterrupted, peaceful, and public possession up to the fence line for more than 30 years. The McLemores filed a reconven-tional demand to fix the boundary between their property and Willow Chute’s property. The two suits were consolidated for trial.
On September 5, 2014, Willow Chute filed a motion for summary judgment contending that there was no genuine issue of material fact regarding whether the servitude had prescribed due to nonuse. Out of an abundance of caution and in response to the suit to cancel the.servitude, the Roos sellers executed a quitclaim deed in October 2014 conveying to the McLemores the servitude/right of use reserved in the act of exchange. The trial court ultimately denied Willow Chute’s motion for summary judgment.
The trial of the consolidated cases took place on December 12, 2014. After taking the. matter under advisement, the trial court rendered a written opinion and judgment on January 12, 2015. The trial court fixed the boundary along the old fence line where it remains visible. Where the fence line is no longer visible, the trial court fixed the boundary in accordance with the 1984 act of exchange, including the servitude reserved in that act. |4The trial court found that the plain language of the act of exchange indicates a transfer of all interest in the servitude to the heirs and assigns of Armand W. Roos, Jr. Finally, the trial court found that the servitude had not prescribed.
On January 15, 2015, Willow Chute filed a suspensive appeal motion. After the trial court issued an amended judgment on January 30, 2015, declaring that the servitude remained in full force and effect, Willow Chute amended its motion to appeal that as well.
On appeal, Willow Chute asserts legal error in .the trial court’s finding that the servitude reserved in the 1984 act of exchange was transferred to the McLemores, error in finding that the servitude has not prescribed for nonuse,' and error in setting the boundary according to the visible fence *270 line and the 1984 act of exchange instead of in accordance with the 1984 boundary agreement.
DISCUSSION

Servitude

Willow Chute first argues that the trial court properly determined that the servitude was á personal, rather than predial servitude, but that it made a legal error in finding that the servitude was transferred to the McLemores by either the 2012 cash sale or the subsequent quitclaim deed. Our review shows no error of law by the trial court.
We note that whether the servitude should be classified as personal or predial was not an issue specifically argued before the trial court. In its suit to cancel the servitude, Willow Chute referred to it as a personal servitude. |fiThe record does not show that the McLemores or Roos defendants disputed this classification in the trial court proceedings. Rather, the disputed issues were whether the personal servitude was transferred by the cash sale deed and whether it had prescribed due to nonuse. ' .
Citing Sustainable Forests, L.L.C. v. Harrison, 37,152 (La.App.2d Cir.5/22/03), 846 So.2d 1283, Willow Chute asserts,that the servitude was not transferred to the McLemores because the cash sale deed neither referred to the servitude nor described the land burdened by it. In that case, the plaintiff, Sustainable Forests, filed suit to prevent the defendants from interfering with its use of a right of way across their rural land. The servitude at issue was created by a 1963 road grant in favor of the plaintiffs predecessor-in-title, International Paper (“IP”), by the defendants’ predecessor-in-title. The plaintiff contended that the 1998 deed by which IP conveyed the land to it also conveyed the servitude. Filing an exception of no right of action, the defendants argued that the right of way was not conveyed because the deed did not specifically describe it.
The trial court denied the exception, but the appellate court reversed. The court classified the right of way as a personal servitude, namely a right of use, and recognized that it is transferable as provided in La. C.C. art. 643. However, unlike a predial servitude, the right of use does not merely pass with the sale of the dominant estate.[1] The court explained that the right of use may be conveyed “by a deed identifying either the initial deed of origin of the right of use or a description of the land burdened by the right |fiof use.” Apparently, nothing in the 1998 deed sufficed to convey the servitude to IP, but the court remanded the matter for the plaintiff to determine whether its purchase agreement might have language that would provide a right of action.
Here, the cash sale deed has clear language conveying the right of way to the McLemores. The property was conveyed “with all and singular rights of way, servi-tudes, easements ... pertaining thereto” and was made “subject to any servitudes, rights of way, mineral leases and any other instruments or encumbrances affecting the Property.” Also, and more importantly, the property description attached as Exhibit A to the cash sale deed and referenced in it identifies the initial deed of origin, namely the 1984 act of exchange, and the land burdened by the servitude.[2] *271 For these reasons, we find that the cash sale deed conveyed to the McLemores the personal servitude reserved in the 1984 act of exchange.
We also find no error in the trial court’s determination that the servitude had not prescribed. Rights of use are regulated by the rules governing predial servitudes and usufructs to the extent that application of such rules is compatible with rules governing rights of use. La. C.C. art. 17645. Nonuse for ten years extinguishes predial servitudes. La. C.C. art. 753. In actions asserting prescription of nonuse, an essential element of proof is that the servitude was in fact not used for any purpose consistent -with its grant. Palgrave v. Gros, 02-249 (La.App. 5th Cir.9/30/02), 829 So.2d 579. Prescription begins to run from the date of last use. La. C.C. art. 754; Id. The owner of the dominant estate bears the burden of proving - that the servitude has been used. Southern Amusement Co. v. Pat’s of Henderson Seafood & Steak, 2003-767 (La.App. 3d Cir.3/31/04), 871 So.2d 630; Tilley v. Lowery, 511 So.2d 1245 (La.App. 2d Cir.1987). Here, the McLemores, as the party benefitting from the personal servitude, bear of the burden of proving its use so as to defeat the claim that it prescribed.
The record indicates that the right of way.at issue is located on, as yet, undeveloped land. Scott Simmons, the sole member of Willow Chute, testified that the land is family-owned property. His parents, who are now deceased, lived in a house on the land. Simmons, who lives in New Orleans and has never lived on the' Willow Chute land, visits the property with his family on holidays. - He stated that there is a fishing pond and that he. has planted 460 pecan trees on the property. He described the right of way as a gravel road that goes by the house on the property.
To prove that" the servitude had not been extinguished/prescribed by nonuse, the McLemores introduced the depositions of Eugene Norred and Robert Rusher. Both men used the servitude with Alva Rich, a lessee of the Roos (now McLe-more) property. Rusher testified that Rich'leased about 100 acres from the Roos family from 1982 until 2010. During this time, he |shunted and fished with'Rich on a regular basis and used the right of way at issue during these activities. Rusher recalled that the right of way passed by the Simmons house and that they would wave at Simmons’s father and sometimes stop for a visit. Rusher last used the -right of way about three years prior to his deposition.
Norred testified that he walked or rode along the right of way for purposes of hunting with Rich and hauling hay for him from 1982 until Rich went to a nursing home in 2010.
The deposition testimony of Norred and Rusher on behalf of the McLemores shows that the right of way was used within the last 10 yéars. Consistent with the undeveloped nature of the land, the right of way was used for hunting and hauling hay for the lessee of the land. In its ruling, the trial court noted that it considered compelling the testimony of Simmons and the fact that he lacked personal knowledge that would substantiate his claim that the *272 servitude had prescribed due to nonuse. Willow Chute correctly notes that it did not have the burden of proving the nonuse; however, Simmons’s testimony highlights the absence of any evidence rebutting the testimonies of Rusher and Norred regarding use of the servitude. We also note Mr. McLemore’s testimony indicating that the servitude will provide him with necessary access to acreage on his property during times when high water cuts off the four acres where his house is located from the acreage where his cattle will be pastured. On this record, we find no error in the trial court’s finding that the personal servitude had not expired/prescribed due to 10-years nonuse.

IsBoundary

Willow Chute contends that the trial court erred in setting the boundary between its property and the McLemores’ property according to the old fence line, where visible, and the 1984 act of exchange where the fence is not visible. Asserting that the McLemores failed to prove that the old fence was sufficient to constitute a visible boundary or adverse possession by themselves or ancestors in title of 30 years up to the old fence line for purposes of acquisitive prescription, Willow Chute argues that the boundary should be fixed in accordance with a boundary agreement executed in 1984.
A boundary may be fixed judicially or extrajudicially. It is fixed extrajudicially when the parties, by written agreement, determine the line of separation between their lands. La. C.C. art. 789. When the boundary is fixed extrajudicially, the agreement of the parties has the effect of a compromise. La. C.C. art. 795. The fixing of the boundary does not preclude, the running of acquisitive prescription in favor of an adverse possessor. When one of the owners of contiguous lands disregards the boundary agreement and possesses land within visible bounds without interruption for 30 years, prescription takes precedence over the boundary agreement. La. C.C. art. 795, Comment (b).
Whether or not disputed property has been possessed for 30 years without interruption is a factual issue and will not be disturbed on appeal absent a showing of abuse of discretion, or manifest error. Bennett v. Louisiana Pacific Corp., 29,598 (La.App.2d Cir.05/09/97), 693 So.2d 101319, writ denied, 97-1552 (La.10/03/97), 701 So.2d 199. Additionally, boundary location is a question of fact and the determination of its location by the trial court should not be reversed absent manifest error. Mistric v. Kurtz, 610 So.2d 226 (La.App. 3d Cir.1992), writ denied, 612 So.2d 102 (La.1993).
In this case, the parties stipulated that the “very old fence” had long formed the boundary of a good portion of their properties. In particular, the defendants admitted to the facts contained in allegations (16) through (23) of Willow Chute’s petition to quiet title. Some of these allegations, set forth.by Willow Chute, state in pertinent part:
(16) During all times that petitioner ... owned and maintained Willow Chute Property, a visible enclosure — a very old fence — has formed the boundary on the East, North and part of the Western lines of the Willow Chute Property.
(20) For longer than 30 years, petitioner and petitioner’s ancestors in title to the Willow Chute Property, have maintained continuous, uninterrupted, peaceful, public and unequivocal possession without interruption to the Willow Chute Property up to the visible enclosure of the said fence.
*273 (23) The said fence separates the Willow Chute Property and the McLemore Property and has separated the properties for longer than 30 years.
Considering these allegations, Willow Chute prayed for, inter alia, the following relief:
That Willow Chute Farms, L.L.C. be recognized as the true and lawful owner by acquisitive prescription to the fence that divides the properties;
That the fixing of said boundary on said fence line shall result in each party to be declared owner up to the fixed fence line.
Considering that Willow Chute petitioned the trial court to set the ] ^boundary at the old fence line, we find its argument that the old fence was insufficient to constitute a visible boundary and that the boundary should be set in accordance with the 1984 boundary agreement to be perplexing. Additionally perplexing is Willow Chute’s argument that the McLemores failed to prove ownership by acquisitive prescription up to the fence line. The McLemores did not assert a claim of acquisitive prescription but merely stipulated to the allegations of fact set forth by Willow Chute in- its petition to cancel the servitude and quiet title. By Willow Chute’s own petitions and the parties’ admissions, the fence line enclosure had existed for more than 30 years and served as the agreed-upon boundary during that time, notwithstanding the 1984 boundary agreement. The remnants of this fence line run about 600 feet and give the McLe-mores’ property approximately five feet in width. On this record, we find that trial court did not err in setting the boundary at the fence line, where visible.
We note that where the fence line was not visible, the court, in accordance with La. C.C. art. 789’s alternative of fixing a boundary extrajudicially by written agreement, set the boundary according to the 1984 act of exchange. We cannot say that the trial court was manifestly erroneous in doing so.
Lastly, Willow Chute eoncédes in its brief that |iathe 1984 act of exchange should “partially control the fixing of the boundary near the southeast corner” of its property. However, Willow Chute contends that the trial court’s judgment mistakenly provides a metes and bounds description of the servitude area rather than of the 0.31-acre tract that was the subject of the 1984 act of exchange. It asks that the trial court’s judgment be amended to reflect the correct legal description of the property. However, we will remand for the trial court to correct the description of that part of the boundary controlled by the act of exchange and to have the boundary set by the surveyor; ■-
CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. The matter is remanded to the trial court for amendment of the judgment' to correctly reflect the boundary and to order that the correct boundary be set by the surveyor. Costs of this appeal are assessed to Willow Chute Farms, L.L.C.
AFFIRMED and REMANDED.
BROWN, C.J., dissents with written reasons.

. See La. C.C: Art. 650 providing that a predial servitude is inseparable from the dominant estate and passes with it.

. The cash sale deed provides, in relevant part (with emphasis added);
A tract of land located in Section 27, Township 19 North, Range 13 West, Bossier Par *271 ish, Louisiana, more particularly described as follows:
Beginning at the South Quarter comer of Section 27, Township 19 North, Range 13 West, run West 4 chains and 25 links for Point of Beginning; ■ thence run West 15 chains and 75 links, thence North 20 chains, thence East 15 chains and 75 links, thence South 20 chains to the Point of Beginning, containing 31.5 acres, more or less,
. Less and except a triangular 031 acres in SW comer, exchanged to Fred E. Wemple, Jr., et at in Book 787, page 4S0 of the Conveyance Records for the Parish of Bossier, Louisiana.